# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ES IV, LLC, | : | |
| Plaintiff | : | |
| | : | Civil Action No. _____ |
| v. | : | |
| | : | |
| UPPER MERION TOWNSHIP BOARD | : | |
| OF SUPERVISORS and UPPER MERION | : | |
| TOWNSHIP CODE ENFORCEMENT | : | |
| DEPARTMENT, | : | |
| Defendants | : | |

## PLAINTIFF'S COMPLAINT FOR DECLARATORY RELIEF, INJUNCTIVE RELIEF, DAMAGES, ATTORNEYS' FEES AND COSTS

## INTRODUCTION

1.      This is a civil action wherein Plaintiff prays for a declaratory judgment and both a preliminary and permanent injunction to restrain and enjoin the named Defendants, as well as their agents, employees, and representatives, from acting under color of state law to deprive Plaintiff of its rights, privileges, and immunities secured to it by the United States Constitution.  Specifically, Plaintiff seeks to have this Court declare a provision of the Codes and Ordinances of Upper Merion Township (**"Township Ordinance"**) unconstitutional under the First Amendment on its face, and as applied, and to enjoin enforcement of that provision against Plaintiff.  Additionally, the provision has been enforced in a manner that violates Plaintiff's rights under the Equal Protection Clause.  Plaintiff herein seeks declaratory and injunctive relief, damages, costs, and attorneys' fees pursuant to 42 U.S.C. §1988.

## PARTIES

2.      Plaintiff ES IV, LLC, is a limited liability company organized under the laws of Pennsylvania, with its principal place of business located at 143 South Gulph Road, King of Prussia, Pennsylvania, 19406.

3.      Upon information and belief, the Upper Merion Township (**"Township"**) Board of Supervisors (**"Board"**) is the legislative body of the Township, and as such, is authorized to enact any and all zoning ordinances for the Township.  Upon information and belief, the Board is located at 175 West Valley Forge Road, King of Prussia, Pennsylvania 19406-1802.

4.      Upon information and belief, the Township Code Enforcement Department (**"Department"**) is an administrative agency duly established by the Township as the agency responsible for enforcing the Township Ordinance.  Upon information and belief, Code Enforcement Department of the Township is located at 175 West Valley Forge Road, King of Prussia, Pennsylvania 19406-1802.

## JURISDICTION AND VENUE

5.      This Court has federal subject matter jurisdiction to adjudicate Plaintiff's claims for deprivation of federal constitutional rights under 28 U.S.C. §§1331 and 1343.  This action seeks to secure Plaintiff's constitutional rights and protections under the First Amendment (U.S. Const., Amend. I), and the Equal Protection Clause of the Fourteenth Amendment (U.S. Const., Amend. XIV).  This action seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202, and 42 U.S.C. §§1983 and 1988.

6.      Personal jurisdiction is proper in this Court because all of the Defendants reside in and are domiciled in this judicial district.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b).  All Defendants reside in Pennsylvania, and the events giving rise to this action occurred in this district.

7738622v2

## THE TOWNSHIP ORDINANCE

8.      Within the Township's Ordinance, there is a section that addresses "Sexually Oriented Businesses."  *See generally* Township Ord., Art. XXXVIII.

9.      The designation of a business as a "Sexually Oriented Business" has substantial repercussions.  Among other things, such businesses are only able to locate within certain limited districts designated for such uses.  Then, within those limited districts, such businesses cannot be located within 1000 feet of a church, public or private pre-elementary, elementary or secondary-school, public library, child-care facility or nursery school, boundary of any residential district, or public park adjacent to any residential district.   A true and correct copy of Township Ord. §165-266 is attached hereto as **Exhibit A**.

10.     The operation of an "Adult Store" is one of the adult uses that triggers regulation as a "Sexually Oriented Business," Township Ord. §165-266(B), if only as little as one page on one textbook or periodical depicts or describes sexual activity or anatomical parts.

11.     Indeed, the term "Adult Store" is defined as:

**A.**

A Commercial establishment which offers for sale or rental for any form of consideration any one or more of the following:

**(1)**

Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specified sexual activities or specified anatomical areas.

**(2)**

Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

**B.**

> A commercial establishment may have business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specific anatomical areas and still be categorized as an adult store. Such other business purposes will not serve to exempt such a commercial establishment from being categorized as an adult store.

A true and correct copy of Township Ord. §165-266 (Am. Apr. 15, 2021 by Ord. No. 2021-872) is attached hereto as **Exhibit B**.

12.     The term "specified sexual activities" is defined as: "(A) The fondling or other erotic touching of human genitals, pubic region, buttocks, anus or female breasts; (B) Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation or sodomy; (C) Masturbation, actual or simulated; (d) Excretory functions as part of or in connection with any of the activities set forth in Subsections A through C above."   Township Ord. §165-266.

13.     The term "specified anatomical areas" is defined as "The male genitals in a state of sexual arousal and/or the vulva or more intimate parts of the female genitals."   Township Ord. §165-266 (Exhibit A).

## <u>GENERAL ALLEGATIONS</u>

14.     In 2019, Plaintiff desired to open a general retail store located within the Township at 143 South Gulph Road (**"Premises"**) which would offer patrons general merchandise, such as smoke-related products and novelty t-shirts, as well as a small portion of sexually explicit, non-obscene material, commonly referred to as "adult material" (**"Proposed Store"**).

15.     At that time, the term "Adult Store" was not part of the Township Ordinance. Instead, the Township Ordinance contained the term "Adult Bookstore or Adult Video Store" which was defined as:

A.

A commercial establishment which, as one of its principal business purposes, offers for sale or rental for any form of consideration one or more of the following:

1.

Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specific sexual activities or specified anatomical areas.

2.

Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

B.

A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as 'adult bookstore' or 'adult video store.' Such other business purposes will not serve to exempt such commercial establishment from being categorized as an 'adult bookstore' or 'adult video store' so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe specified sexual activities or specified anatomical areas.

A true and correct copy of Township Ordinance effective Jan. 20, 2015, §165-266 (added Sept. 24, 1990 by Ord. No. 90-582) is attached hereto as **Exhibit C**.

16.     Because the term "principal business purpose" was vague, and a zoning officer's standardless interpretation of that vague term could wrongly lead to designation of the Proposed Store as an "Adult Bookstore or Adult Video Store," which would then trigger application of the onerous regulations for "Sexually Oriented Businesses" to the Proposed Store, Plaintiff sought

5

clarity from the Township as to its interpretation and application of that vague Ordinance, specifically, what constituted "principal."

17.     In particular, on October 16, 2019, counsel for Plaintiff wrote to the Township, explaining that the term "principal business purpose" – without any further limiting language, such as a minimum percentage of "specified materials" that triggered designation as an "Adult Bookstore or Adult Video Store," and thus, application of the onerous regulations for "Sexually Oriented Businesses" – would be construed as vague in any First Amendment challenge to the validity of that provision of the Township Ordinance.  A true and correct copy of the Oct. 16, 2019 letter is attached hereto as **Exhibit D**.  Plaintiff's counsel asked for the provision to be interpreted as applicable only to stores that allocate at least 50% of their merchandise to "specified material" as supported by federal and state judicial opinions interpreting similar provisions, which counsel provided

18.     Subsequently, Plaintiff's counsel spoke to Mark Zadroga, the Director/Chief Zoning Official for the Department about Plaintiff's vagueness concerns.

19.     Mr. Zadroga refused to identify any percentage or provide any other criteria that defined the vague and standardless term "principal business purpose."

20.     On December 17, 2019, Plaintiff submitted a use and occupancy permit application for the Proposed Store, indicating that Plaintiff intended to operate a general retail establishment selling smoke-related products, which also would allocate no more than 21% of its floor space to "adult material."  A true and correct copy of the Dec. 17, 2019 permit application is attached hereto as **Exhibit E**.

21.     On January 9, 2020, the Township denied the application, claiming that the Proposed Store constituted an "adult use," which was not permissible at the Premises.

6

Additionally, the Township indicated that "additional information requiring compliance" was not included in the application.  A true and correct copy of the Jan. 9, 2020 denial is attached hereto as **Exhibit F**.

22.     On January 22, 2020, Plaintiff submitted a new permit application seeking authorization to operate the Proposed Store as previously described.  This application included a cover letter from Plaintiff's counsel that provided additional information and explained the reasons why Mr. Zadroga's initial denial had "misapprehended the nature of the use" at the Premises.  In particular, Plaintiff's counsel explained that Plaintiff intended to carry, display, and sell a lesser amount of alleged "adult" material than what could deemed a "principal business purpose." A true and correct copy of the Jan. 22, 2020 application with cover letter is attached hereto as **Exhibit G**.

23.     On February 14, 2020, Mr. Zadroga wrote to Plaintiff's counsel indicating that, notwithstanding the fact that no more than 21% of floor space would be allocated to "adult material," the Proposed Store was an "Adult Bookstore or Adult Video Store," which meant that it could not operate at the Premises because such establishments were prohibited from operating in the zoning district where the Premises was located.  A true and correct copy of the Feb. 14, 2020 denial is attached hereto as **Exhibit H**.  Thus, the Township denied the second permit application.

24.     On March 13, 2020, Plaintiff appealed the denial, a true and correct copy of the appeal is attached hereto as **Exhibit I**, and the Township Zoning Hearing Board refused to address Plaintiff's claim that the phrase "principal business purpose" was vague and standardless, a true and correct copy of the dismissal is attached hereto as **Exhibit J**.

25.     Notably, while the appeal was pending, on April 15, 2021, the Township modified the Township Ordinance to remove the term at issue concerning Plaintiff's applications and appeal – "Adult Bookstore or Adult Video Store" – which contained the term "principal business purpose"

7

– and replaced that term with the new definition of "Adult Store" – which triggered regulation by sale of one book or periodical with one picture depicting sexual activity or anatomical parts, set forth in full above.

26.     The new definition of "Adult Store" is even more problematic from a constitutional perspective than the original term "Adult Bookstore or Adult Video Store."

27.     Based on the plain text of the definition of "Adult Store," a business can trigger the onerous regulations for "Sexually Oriented Businesses" upon carrying, selling, or displaying as little as "one or more" items that "depict or describe specified sexual activities or specified anatomical areas," in other words, a medical book or non-medical book or magazine containing one picture of any of the prohibited depictions.

28.     Further, based on the plain text of the definition of "Adult Store," a business can trigger the onerous regulations for "Sexually Oriented Businesses" upon carrying, selling, or displaying "one or more . . . "[i]instruments, devices or paraphernalia which as designed for use in connection with specified sexual activities," such as condoms or lubrications.

29.     Consequently, under the new definition of "Adult Store," carrying, selling or displaying just "one or more" of the items discussed above, commonly referred to as "sexually explicit non-obscene material," or "adult material," triggers the onerous regulations for "Sexually Oriented Businesses," whereas, previously, under the definition of "Adult Bookstore or Adult Video Store," a retailer would not be ensnared in the onerous regulations for "Sexually Oriented Businesses" unless the retailer engaged in carrying, selling, or displaying "adult material" as one of its "principal business purposes."

30.     The Township claimed that this new definition was "necessary for the proper management and control of the Township and to support the health, safety and welfare of its citizens."  *See* Exhibit B.

31.     Upon information and belief, the Township did not consider any studies, judicial opinions, experience-based testimony, or any other evidence of any negative secondary effects prior to enactment of the definition of "Adult Store," especially, any evidence that the presence of a single picture of the subject depictions would generate secondary effects which may be regulated consistent with the First Amendment.

32.     Upon information and belief, there is no evidence tying negative secondary effects with the purchase and off-site consumption or use of "adult material," however defined, for retail establishments that carry, sell, or display a low threshold of "adult material," particularly "one or more" such items as the Township Ordinance sets as the threshold for regulation of establishments as "Sexually Oriented Businesses."

33.     Further, the plain text of the definition of "Adult Store" applies to many establishments for which there is no evidence of negative secondary effects and which, upon information and belief, were not the intended targets of the Defendants' enactment, such as mainstream bookstores, mainstream video stores, grocery stores, big box stores, and pharmacies, all of which sell "adult material," or such items as textbooks, book, DVDs, magazines that contain the subject depictions.

34.     Moreover, many retail establishments located within the Township meet the requirements for regulation as an "Adult Store" because they regularly carry, display, and sell items that purportedly trigger regulation as an "Adult Store," but are not designated as an "Adult Store," and are not subjected to the onerous regulations for "Sexually Oriented Businesses."

7738622v2

35.     Indeed, in a conversation between Plaintiff's counsel and Mr. Zadroga, Mr. Zadroga acknowledged that there was a Spencer's store located within the Township that had not been designated as an "Adult Store" and had not been subjected to the onerous regulations for "Sexually Oriented Businesses."

36.     Upon information and belief, the Spencer's store engages in carrying, selling, and displaying significantly more than just "one" item of "adult material" as defined in the new definition of "Adult Store."

37.     The zoning district in which the Spencer's store is located is not zoned for "Sexually Oriented Businesses," yet the Spencer's store is allowed to continue to operate at that location in violation of the Township Ordinance.

38.     Further, Mr. Zadroga has suggested that a retail establishment will be designated as an "Adult Store" if the establishment carries, displays, or sells lingerie.  A true and correct copy of a Sept. 21, 2020 letter from Mr. Zadroga is attached hereto as **Exhibit K**.  This further demonstrates the standardless discretion being exercised under the "Adult Store" Ordinance.

39.     Yet, numerous department stores, and specialty stores such as Victoria's Secret, Pink, and Intimissimi are located within the Township in zoning districts where "Sexually Oriented Businesses" are prohibited from operating, carry, display, and sell lingerie, and have not been designated as "Adult Stores."

40.     Further, upon information and belief, Defendants enacted the new definition of "Adult Store" to target Plaintiff's protected expression, to silence Plaintiff, and to ensure that Plaintiff was unable to engage in the same protected expression as numerous other similarly situated retailers.  Prior to enactment of the new "Adult Store" definition, the Township had a definition of "Adult Bookstore or Adult Video Store" that only triggered regulation of an

10

establishment as a "Sexually Oriented Business" if the establishment's "principal business purpose" was the sale of "adult material." Plaintiff's counsel wrote to Defendants, providing extensive authority for why such a term must be interpreted as a percentage of an establishment's overall floor space allocated to "adult material" to withstand a constitutional challenge. Plaintiff's counsel also spoke to Mr. Zadroga about this issue. Mr. Zadroga refused to provide any percentage for the term "principal business purpose." Plaintiff filed a permit application, requesting authorization to operate a retail establishment that would allocate no more than 21% of its floor space to "adult material," which was summarily denied. Shortly thereafter, the Township Ordinance was modified to remove the definition of "Adult Bookstore or Adult Video Store," and to replace it with the definition of "Adult Store," which triggered the onerous regulations for "Sexually Oriented Businesses" upon displaying, carrying, or selling just "one or more" items of "adult material." Due to the timing of the enactment, along with Plaintiff's counsel's communications with Township officials, among other things, upon information and belief, the new definition of "Adult Store," was enacted to target Plaintiff, to prohibit Plaintiff from engaging in protected expression at the Premises, and to deprive Plaintiff of the right to engage in the same protected expression as numerous other similarly situated retailers.

41.    Upon information and belief, Defendants have intentionally treated Plaintiff different from other similarly situated retailers by prohibiting Plaintiff from engaging in sexually explicit non-obscene speech while at the same time allowing other similarly situated retailers to engage in that very same speech. Plaintiff is prohibited from carrying, displaying, or selling any items that trigger regulation as an "Adult Store," on the basis of the plain text of that provision and how it has been interpreted (which prohibits Plaintiff from carrying, displaying, or selling lingerie). But mainstream bookstores, mainstream video stores, pharmacies, big box stores, grocery stores,

department stores, and specialty stores such as Spencer's, Victoria's Secret, Pink, and Intimissimi, are allowed to engage in the very same sexually explicit, non-obscene speech without any limitations, and without designation as "Adult Stores."

42.     Because the Defendants denied Plaintiff's permit application to operate a retail establishment that allocated 21% of floor space to sexually explicit, non-obscene material under the more lenient definition of "Adult Bookstore or Adult Video Store," wherein a retailer would not trigger regulation as a "Sexually Oriented Business" unless the retailer carried, displayed, or sold sexually explicit, non-obscene material as one of its "principal business purposes," there is no doubt that, if Plaintiff applied for a permit under the current "Adult Store" Ordinance, which triggers regulation as a "Sexually Oriented Business" when a retailer carries, displays, or sells as little as "one or more" items of sexually explicit, non-obscene material, the Department would have denied the application and the denial would have been affirmed.

43.     Further, because the Board amended the Township Ordinance to replace the Ordinance for "Adult Bookstore or Adult Video Store" with "Adult Store" after Plaintiff's counsel identified the vulnerabilities that the "Adult Bookstore or Adult Video Store" Ordinance would face on any constitutional challenge, and after Plaintiff applied for a permit to operate a store with 21% of floor space allocated to sexually explicit non-obscene material, which was well below the level of material that federal courts have found to constitute a "principal business purpose," there is no doubt that, if Plaintiff sought a variance from the "Adult Store" Ordinance, the variance application would have been denied and the denial would have been affirmed.

44.     Indeed, once the Board enacted the "Adult Store" Ordinance, it would have been futile for Plaintiff to either apply for a permit or apply for a variance from the "Adult Store" Ordinance.

7738622v2

45.     Consequently, Plaintiff has suffered a content-based violation of the First Amendment at the hands of Defendants.  Plaintiff has been unable to exercise its First Amendment rights.  Plaintiff has been subjected to a deprivation of its rights under the Equal Protection Clause of the Fourteenth Amendment.  Each day that the new definition of the term "Adult Store" remains in effect, Plaintiff is deprived of its First and Fourteenth Amendment rights.

46.     Additionally, Plaintiff has signed a ten-year commercial lease, with options for renewal, and options to lease additional space, but has been unable to commence operations as fully envisioned as the Proposed Store.  As a result, Plaintiff has suffered economic harm and continues to suffer ongoing economic harm each day that the new definition of "Adult Store" remains in effect.

## CLAIMS

## COUNT 1

**Declaratory Relief, Injunctive Relief and Attorneys' Fees and Costs because the Adult Store Definition Violates Plaintiff's First Amendment Rights Asserted against all Defendants**

47.     Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

48.     The rights enforceable by 42 U.S.C. §1983 include, among other rights guaranteed by the United States Constitution, the right to be free from discriminatory municipal action that violates the First Amendment of the United States Constitution.

49.     Plaintiff will be engaging in protected expression at the Premises in the form of the sale of instructional DVDs and literature, as well as clothing, greeting cards, Halloween costumes, games, sashes, tiaras, key chains, buttons, gag gifts, joke books, and bumper stickers. Furthermore, Plaintiff's sale of material related to the emerging bondage-domination-sadomasochism political and cultural movement, whether considered symbolic speech or

expressive conduct, constitutes protected expression.   Finally, Plaintiff's displays and the packaging on Plaintiff's merchandise constitute protected commercial expression.

50.   ***Facially overbroad***.  The definition of "Adult Store," which triggers the onerous regulations for "Sexually Oriented Businesses," is overbroad because it reaches a substantial number of impermissible applications relative to its legitimate sweep.  The term "Adult Store" applies to many establishments that are unlikely to produce negative secondary effects of any kind. For example, a bookstore would become ensnared by the definition if it sold any books on classic art which include photographs of nudity, any romance novels that describe "specified sexual activities" or "specified anatomical areas," such as the widely popular novel entitled, *50 Shades of Grey*, or medical journals or books that describe or depict gynecological issues, pregnancy, or breast feeding.   Further, any grocery store, pharmacy, or retail establishment that sells condoms or lubrications would be ensnared for selling "one or more . . . [i]instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities."

51.   ***Presumptively invalid content-based regulation and cannot withstand strict scrutiny or any other analysis under the First Amendment***.  The new "Adult Store" definition is a content-based regulation that is presumptively invalid and cannot withstand strict scrutiny.  The onerous regulations for "Sexually Oriented Businesses" are triggered under the new "Adult Store" definition if a retail establishment engages in speech concerning sexually explicit, non-obscene material of any kind.  The definition of "Adult Store" is not narrowly tailored.  It applies to any retail establishment that offers just "one or more" items of "adult material."  The definition of "Adult Store" does not promote a compelling governmental interest.  Upon information and belief, there is no evidence of negative secondary effects concerning retail establishments that offer the

14

offsite consumption of "one or more" items of "adult material."  Further, there are less restrictive alternatives available.

52.     Moreover, upon information and belief, Defendants enacted the new definition of "Adult Store" to target Plaintiff's speech and to silence Plaintiff from engaging in protected expression at the Premises.

53.     ***Unlawful prior restraint.***  The Township has enacted a law that subjects the exercise of First Amendment freedoms to a permitting scheme without narrow, objective, and definite standards.  In particular, retailers that fall under one of the definitions of "Sexually Oriented Businesses," which includes the definition of "Adult Store," are unable to engage in any level of sexually explicit, non-obscene speech without obtaining a permit.  The permitting scheme targets retailers who want to engage in sexually explicit, non-obscene speech, forcing them to apply for permits prior to engaging in such speech.  Designation as a "Sexually Oriented Business" severely limits the locations where such retailers can engage in protected expression.  This permitting scheme vests Township officials with unbridled discretion because it does not contain narrow, objective, and definite standards.  The term "Adult Store" is unconstitutional both on its face, and as applied to Plaintiff.

54.     By reason of the foregoing, Plaintiff is entitled to a judgment declaring that Defendants violated Plaintiff's First Amendment rights.

## COUNT 2
**Declaratory Relief, Injunctive Relief and Attorneys' Fees and Costs because the Defendants Denied Plaintiff its Rights under the Equal Protection Clause Asserted against all Defendants**

55.     Plaintiff incorporates by reference each and every paragraph above as though fully set forth herein.

7738622v2

56.     The rights enforceable by 42 U.S.C. §1983 include, among other rights guaranteed by the United States Constitution, the right to be free from discriminatory municipal action that violates the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

57.     Defendants' failure to issue the necessary permits to Plaintiff to operate its Proposed Store at the Premises violates Plaintiff's rights under the Equal Protection Clause, which prohibits municipal actors from discriminating on the basis of the content of expression.

58.     The Fourteenth Amendment's Equal Protection Clause instructs that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, §1.

59.     Under the Fourteenth Amendment, a law that impermissibly interferes with the exercise of a fundamental right, such as freedom of expression, is subject to strict scrutiny.

60.     The enactment of the "Adult Store" Ordinance was discriminatory, arbitrary, capricious, unreasonable, and based on the improper motive to deprive Plaintiff of the use of the Premises, as well as the right to engage in protected expression concerning sexually explicit, non-obscene speech when other, similarly situated general merchandise retailers were not subjected to the same deprivation of rights.

61.     Defendants knew how Plaintiff intended to use the Premises and knew that Plaintiff intended to engage in protected expression concerning sexually explicit, non-obscene speech when it enacted the "Adult Store" Ordinance to specifically prevent that use and that speech.

62.     Defendants have refused to allow Plaintiff to operate its Proposed Store at the Premises and in doing so, have deprived Plaintiff of the right to engage in protected expression.

7738622v2

63.     Plaintiff is similarly situated to all other non-adult, general retail businesses in the area, which are presently permitted to operate and to engage in sexually explicit non-obscene speech, while Plaintiff has been denied those rights.

64.     At the very least, Plaintiff is similarly situated to Spencer's, which is operating without designation as an "Adult Store," even though Spencer's engages in carrying, displaying, and selling more than "one" item of "adult material" as defined in the new definition of "Adult Store."

65.     Upon information and belief, the Township and/or its officers, employees, or agents are aware that Spencer's is engaged in carrying, displaying, and selling more than "one" item of "adult material" as defined in the new definition of "Adult Store" in a zoning district that does not allow for the operation of an "Adult Store" like Spencer's.

66.     The Township and/or its officers, employees, or agents have declined to enforce the onerous regulations for "Sexually Oriented Businesses" against Spencer's, while at the same time, barring Plaintiff from operating its Proposed Store at the Premises.

67.     The Township and/or its officers, employees, or agents have declined to enforce the onerous regulations for "Sexually Oriented Businesses" against numerous other general retail establishments that sell "one or more" items of "adult material" as defined in the term "Adult Store," and as interpreted by the Zoning Officer as being inclusive of the sale of lingerie, while at the same time, barring Plaintiff from operating at the Premises and from engaging in the same speech and conduct as those other retailers.

68.     Upon information and belief, Defendants have intentionally treated Plaintiff differently from other similarly situated retailers by prohibiting Plaintiff from engaging in sexually

explicit non-obscene speech while at the same time allowing other similarly situated retailers to engage in that very same speech.

69.    There is no rational basis for the Defendants' difference in treatment of Plaintiff and other similarly situated retailers.

70.    The difference in treatment was done to prevent Plaintiff from engaging in protected expression.

71.    By reason of the foregoing, Plaintiff is entitled to a judgment declaring the Defendants' unconstitutional administration of the Zoning Ordinance and hearing procedures to Plaintiff's detriment as being a violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

72.    This unequal enforcement of the Zoning Ordinance and classification of Plaintiff prevents Plaintiff from operating the Proposed Store as envisioned.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests this Honorable Court to grant relief to Plaintiff and against Defendants as follows:

A.    Finding and declaring that the Township Ordinance's definition of "Adult Store" impermissibly discriminates on the basis of protected expression in violation of the First and Fourteenth Amendments;

B.    Finding and declaring that the definition of "Adult Store" is unconstitutional on its face and as applied to Plaintiff under the First and Fourteenth Amendments to the United States Constitution;

C.    Finding and declaring that Defendants targeted Plaintiff for special treatment on the basis of Plaintiff's protected expression in violation of the First and Fourteenth Amendments;

18

D.     Enjoining Defendants and their employees, agents, and representatives, as well as all persons acting for or on their behalf, from enforcing the definition of "Adult Store" as a trigger to regulation as a "Sexually Oriented Business" against Plaintiff or its interests;

E.     Awarding Plaintiff monetary damages against Defendants for, *inter alia*, lost profits, loss of good will, remodeling costs, maintenance costs, and deprivation of constitutional rights;

F.     Awarding Plaintiff its attorney fees and costs under 42 U.S.C. §1988; and

G.     Awarding such further and additional relief that the Court deems just and proper.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, PC

/s/ *Pamela M. Tobin*
Pamela M. Tobin, Esquire
Attorney ID No. 54016
910 Harvest Drive
PO Box 3037
Blue Bell PA 19422-0765
Phone: (610) 941-2543
Fax:     (610) 684-2041
ptobin@kaplaw.com
Attorneys for Plaintiff ES IV, LLC

PAUL J. CAMBRIA, JR*.
ERIN MCCAMPBELL PARIS*
LIPSITZ GREEN SCIME CAMBRIA LLP
Attorneys for Plaintiff ES IV, LLC
Office and Post Office Address
42 Delaware Avenue, Suite 120
Buffalo, New York 14202-3901
Phone: (716) 849-1333
Fax: (716) 855-1580
E-mail: pcambria@lglaw.com
          eparis@lglaw.com

*     Pro hac vice application to be submitted forthwith

Dated:  June 10, 2022

7738622v2

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ES IV, LLC, | : |
| Plaintiff | : |
| | : Civil Action No. _____ |
| v. | : |
| | : |
| UPPER MERION TOWNSHIP BOARD | : |
| OF SUPERVISORS and UPPER MERION | : |
| TOWNSHIP CODE ENFORCEMENT | : |
| DEPARTMENT, | : |
| Defendants | : |

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully submitted,

KAPLIN STEWART MELOFF REITER & STEIN, PC

/s/ *Pamela M. Tobin*
Pamela M. Tobin, Esquire
Attorney ID No. 54016
910 Harvest Drive
PO Box 3037
Blue Bell PA 19422-0765
Phone: (610) 941-2543
Fax:    (610) 684-2041
ptobin@kaplaw.com
Attorneys for Plaintiff ES IV, LLC

Dated:  June 10, 2022

7738622v2

**EXHIBIT A**

**§ 165-266.  Definitions.**

As used in this article, the following terms shall have the meanings indicated:

ADULT ARCADE — Any place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically or mechanically controlled still or motion-producing devices are maintained to show images to five or fewer persons per machine at any one time, and where the images so displayed are distinguished or characterized by the depicting or describing of specified sexual activities or specified anatomical areas.

ADULT CABARET — A nightclub, bar, restaurant or similar commercial establishment which regularly features:

A.  Persons who appear in the state of nudity;

B.  Live performances which are characterized by the exposure of specified anatomical areas or by specified sexual activities; or

C.  Films, motion pictures, videocassettes, slides or other photographic reproductions which are characterized by the depiction or description of specified sexual activities or specified anatomical areas.

ADULT MOTEL — A hotel, motel or similar commercial establishment which:

A.  Offers accommodations to the public for any form of consideration; provides patrons with closed-circuit television transmissions, films, motion pictures, videocassettes, slides or other photographic reproductions which are characterized by the depiction or description of specified sexual activities or specified anatomical areas; and has a sign visible from the public right-of-way which advertises the availability of this adult-type of photographic reproductions; or

B.  Offers sleeping rooms for rent four or more times in one calendar day during five or more calendar days in any continuous thirty-day period.

ADULT MOTION-PICTURE THEATER — A commercial establishment where, for any form of consideration, films, motion pictures, videocassettes, slides or similar photographic reproductions are regularly shown which are characterized by the depiction or description of specified sexual activities or specified anatomical areas.

ADULT STORE**[Amended 4-15-2021 by Ord. No. 2021-872]** —

A.  A commercial establishment which offers for sale or rental for any form of consideration any one or more of the following:

(1)  Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specified sexual activities or specified anatomical areas.

(2)  Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

B.   A commercial establishment may have business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as an adult store. Such other business purposes will not serve to exempt such commercial establishment from being categorized as an adult store.

ADULT THEATER — A theater, concert hall, auditorium or similar commercial establishment which regularly features persons who appear in a state of nudity or live performances which are characterized by the exposure of specified anatomical areas or specified sexual activities.

ESCORT — A person who, for consideration, agrees or offers to act as a companion, guide or date for another person or who agrees or offers to privately model lingerie or to privately perform a striptease for another person.

ESCORT AGENCY — A person or business association who furnishes, offers to furnish or advertises to furnish escorts as one of its primary business purposes for a fee, tip or other consideration.

ESTABLISHMENT — Includes any of the following:

A.   The opening or commencement of any sexually oriented business as a new business.

B.   The conversion of an existing business, whether or not a sexually oriented business, to any sexually oriented business.

C.   The addition of any sexually oriented business to any other existing sexually oriented business.

D.   The relocation of any sexually oriented business.

NUDE MODEL STUDIO — Any place where a person who appears in a state of nudity or displays specified anatomical areas is provided to be observed, sketched, drawn, painted, sculptured, photographed or similarly depicted by other persons who pay money or any form of consideration.

NUDITY OR STATE OF NUDITY — The appearance of a human bare buttock, anus, male genitals, female genitals or female breast.

PERMITTEE AND/OR LICENSEE — A person in whose name a permit and/or license to operate a sexually oriented business has been issued, as well as the individual listed as an applicant on the application for a permit and/or license.

PERSON — An individual, proprietorship, partnership, corporation, association or other legal entity.

SEMINUDE — A state of dress in which clothing covers no more than the genitals, pubic region and areolae of the female breast, as well as portions of the body covered by supporting straps or devices.

SEXUAL ENCOUNTER CENTER — A business or commercial enterprise that, as one of its primary business purposes, offers for any form or consideration:

A.   Physical contact in the form of wrestling or tumbling between persons of the opposite sex.

B.   Activities between male and female persons and/or persons of the same sex when one or more of the persons is in a state of nudity or is seminude.

SEXUALLY ORIENTED BUSINESS — An adult arcade, adult store, adult cabaret, adult motel, adult motion-picture theater, adult theater, escort agency, nude model studio or sexual encounter center.**[Amended 4-15-2021 by Ord. No. 2021-872]**

SPECIFIED ANATOMICAL AREAS — The male genitals in a state of sexual arousal and/or the vulva or more intimate parts of the female genitals.

SPECIFIED SEXUAL ACTIVITIES — Includes any of the following:

A.   The fondling or other erotic touching of human genitals, pubic region, buttocks, anus or female breasts.

B.   Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation or sodomy.

C.   Masturbation, actual or simulated.

D.   Excretory functions as part of or in connection with any of the activities set forth in Subsections A through C above.

SUBSTANTIAL ENLARGEMENT OF A SEXUALLY ORIENTED BUSINESS — The increase in floor area occupied by the business by more than 25%, as the floor areas exist on June 25, 1990.

TOWNSHIP — The Township of Upper Merion.

TRANSFER OF OWNERSHIP OR CONTROL OF A SEXUALLY ORIENTED BUSINESS — Includes any of the following:

A.   The sale, lease or sublease of the business.

B.   The transfer of securities which constitute a controlling interest in the business, whether by sale, exchange or similar means.

C.   The establishment of a trust, gift or other similar legal device which transfers the ownership or control of the business, except for transfer by bequest or other operation of law upon death of the person possessing the ownership or control.

**EXHIBIT B**

ORDINANCE NO. 2021-872
**UPPER MERION TOWNSHIP**
**MONTGOMERY COUNTY, PENNSYLVANIA**

**AN ORDINANCE OF THE SUPERVISORS OF THE TOWNSHIP OF
UPPER MERION TO AMEND THE TOWNSHIP'S ZONING
ORDINANCE CHAPTER 165, ARTICLE XXXVIII, SECTION 165-266
"DEFINITIONS" TO AMEND THE TITLE AND DEFINITION OF
"ADULT BOOKSTORE OR ADULT VIDEO STORE" AND THE
DEFINITION OF "SEXUALLY ORIENTED BUSINESS" AND TO
AMEND SECTION 165-267 "CLASSIFICATION"**

**WHEREAS**, the Board of Supervisors, pursuant to the Municipalities Planning Code ("MPC"), 53 P.S. §§ 10101, *et seq.*, has heretofore enacted a Zoning Ordinance, codified at Chapter 165, of the Code of Ordinances of the Township of Upper Merion ("Township"); and

**WHEREAS**, the Board of Supervisors have met the procedural requirements of the MPC and the Pennsylvania Second Class Township Code, 53 P.S. §65101, *et seq.*, for the adoption of this proposed Ordinance, including advertising and holding a public hearing; and

**WHEREAS**, the Second Class Township Code authorizes the Board of Supervisors to make, amend, and adopt Ordinances that are consistent with the Constitution and Laws of the Commonwealth that it deems necessary for the proper management and control of the Township and the health, safety, and welfare of its citizens; and

**WHEREAS**, the Board of Supervisors has determined that it is necessary for the proper management and control of the Township and to support the health, safety, and welfare of its citizens to enact legislation as to sexually oriented businesses.

**NOW THEREFORE, BE IT ORDAINED AND ENACTED** by the Board of Supervisors of Upper Merion Township, and it is hereby ordained and enacted, by the authority of the same, to wit:

**SECTION 1.    CODE AMENDMENTS.**

A. **CHAPTER 165, ARTICLE XXXVIII. Definitions, §165-266, is hereby amended to revise the title and definition of "ADULT BOOKSTORE OR ADULT VIDEO STORE" and the definition of "SEXUALLY ORIENTED BUSINESS" as follows:**

**ADULT STORE**

A. A commercial establishment which offers for sale or rental for any form of consideration any one or more of the following:

    (1) Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specified sexual activities or specified anatomical areas.

    (2) Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

B. A commercial establishment may have business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as an adult store. Such other business purposes will not serve to exempt such commercial establishment from being categorized as an adult store.

**SEXUALLY ORIENTED BUSINESS**

An adult arcade, adult store, adult cabaret, adult motel, adult motion-picture theater, adult theater, escort agency, nude model studio or sexual encounter center.

**B. CHAPTER 165, ARTICLE XXXVIII. Classification, §165-267, is hereby amended to revise the classification of "B. Adult bookstores or adult video stores.", as follows:**

    B. Adult stores.

**SECTION 2. REPEALER.** All Ordinances or parts Ordinances inconsistent herewith or in conflict with any of the specific terms enacted hereby, to the extent of said inconsistencies or conflicts, are hereby specifically repealed.

**SECTION 3. REVISIONS.** The Upper Merion Township Board of Supervisors does hereby reserve the right, from time to time, to adopt modifications of, supplements to, or amendments of its Ordinance, including this provision.

**SECTION 4. SEVERABILITY.** To the extent that any provision of this ordinance is deemed to be unlawful, such provision shall be severable from the remainder of provisions which are not deemed to be unlawful, which lawful provisions shall continue in full force and effect.

**SECTION 5. EFFECTIVE DATE.** This amendment shall become effective five (5) days after date of adoption.

**SECTION 6. <u>FAILURE TO ENFORCE NOT A WAIVER.</u>** The failure of Upper Merion Township to enforce any provision of this Ordinance shall not constitute a waiver by the Township of its rights of future enforcement hereunder.

**ENACTED AND ORDAINED** this *15*<sup>th</sup> day of _____, **2021** by the Board of Supervisors of Upper Merion Township.

ATTEST:

Upper Merion Township Board of Supervisors

William Jenaway, Chair

Advertised Ordinance in Times Herald:  March 30, 2021 and April 6, 2021
Proof of Publication Deated:  April 6, 2021
Hearing Held:  April 15, 2021
Ordinance Adopted 4/15/2021 as Township Ordinance No.:  2021-872
Ordinance Entered:  4/19/2021

# EXHIBIT C

offense.

B.    In default of payment of the fine, such person, the members of such partnership or the officers of such corporation shall be liable to imprisonment for not more than 60 days.

C.    Such fines or penalties shall be collected as like fines or penalties are now by law collected, and all fines collected for the violation of this chapter shall be paid over to the Township.

D.    Penalties set forth under this section shall specifically apply to violations of the number of unrelated individuals permitted to reside in any one housekeeping unit and shall place the responsibility for compliance upon the owner of a property, regardless of knowledge, for any violation of the occupancy requirements established by this chapter.

## § 165-264. Remedies.

In case any building, sign or structure is erected, constructed, reconstructed, altered, repaired, converted or maintained, or any building, sign, structure or land is used, or any hedge, tree, shrub or other growth is maintained, in violation of this chapter or of any regulations pursuant thereto, in addition to other remedies provided by law, any appropriate action or proceeding, whether by legal process or otherwise, may be instituted or taken to prevent such unlawful erection, construction, reconstruction, alteration, repair, conversion, maintenance or use, or to restrain, correct or abate such violation, or to prevent the occupancy of said building, structure or land, or to prevent any illegal act, conduct, business or use in or about such premises.

## § 165-265. Fees.

[Amended 12-29-1955 by Ord. No. 30; 4-2-1956 by Ord. No. 34; 5-25-1957 by Ord. No. 45; 10-1-1962 by Ord. No. 119; 9-28-1964 by Ord. No. 64-146; 11-14-1966 by Ord. No. 66-190; 2-10-1969 by Ord. No. 69-230; 1-15-1973 by Ord. No. 73-304; 3-11-1974 by Ord. No. 74-323; 7-19-1976 by Ord. No. 76-359; 11-8-1976 by Ord. No. 76-361; 12-31-1979 by Ord. No. 79-403; 1-19-1981 by Ord. No. 81-418; 2-22-1988 by Ord. No. 88-529]
Fees for building permits shall be paid in accordance with Chapter A173, Fees. Other fees required in the administration of this chapter shall be paid in advance or accompanying application in accordance with Chapter A173, Fees.

# Article XXXVIII. Sexually Oriented Businesses

[Added 9-24-1990 by Ord. No. 90-582]

## § 165-266. Definitions.

As used in this article, the following terms shall have the meanings indicated:

**ADULT ARCADE**
Any place to which the public is permitted or invited wherein coin-operated or slug-operated or electronically, electrically or mechanically controlled still or motion-producing devices are maintained to show images to five or fewer persons per machine at any one time, and where the images so displayed are distinguished or characterized by the depicting or describing of specified sexual activities or specified anatomical areas.

**ADULT BOOKSTORE OR ADULT VIDEO STORE**
A.    A commercial establishment which, as one of its principal business purposes, offers for sale or

rental for any form of consideration any one or more of the following:

(1)   Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specified sexual activities or specified anatomical areas.

(2)   Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

B.   A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as "adult bookstore" or "adult video store." Such other business purposes will not serve to exempt such commercial establishment from being categorized as an "adult bookstore" or "adult video store" so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe specified sexual activities or specified anatomical areas.

**ADULT CABARET**
A nightclub, bar, restaurant or similar commercial establishment which regularly features:

A.   Persons who appear in the state of nudity;

B.   Live performances which are characterized by the exposure of specified anatomical areas or by specified sexual activities; or

C.   Films, motion pictures, videocassettes, slides or other photographic reproductions which are characterized by the depiction or description of specified sexual activities or specified anatomical areas.

**ADULT MOTEL**
A hotel, motel or similar commercial establishment which:

A.   Offers accommodations to the public for any form of consideration; provides patrons with closed-circuit television transmissions, films, motion pictures, videocassettes, slides or other photographic reproductions which are characterized by the depiction or description of specified sexual activities or specified anatomical areas; and has a sign visible from the public right-of-way which advertises the availability of this adult-type of photographic reproductions; or

B.   Offers sleeping rooms for rent four or more times in one calendar day during five or more calendar days in any continuous thirty-day period.

**ADULT MOTION-PICTURE THEATER**
A commercial establishment where, for any form of consideration, films, motion pictures, videocassettes, slides or similar photographic reproductions are regularly shown which are characterized by the depiction or description of specified sexual activities or specified anatomical areas.

**ADULT THEATER**
A theater, concert hall, auditorium or similar commercial establishment which regularly features persons who appear in a state of nudity or live performances which are characterized by the exposure of specified anatomical areas or specified sexual activities.

**ESCORT**
A person who, for consideration, agrees or offers to act as a companion, guide or date for another person or who agrees or offers to privately model lingerie or to privately perform a striptease for another person.

**ESCORT AGENCY**

A person or business association who furnishes, offers to furnish or advertises to furnish escorts as one of its primary business purposes for a fee, tip or other consideration.

**ESTABLISHMENT**

Includes any of the following:

A.   The opening or commencement of any sexually oriented business as a new business.

B.   The conversion of an existing business, whether or not a sexually oriented business, to any sexually oriented business.

C.   The addition of any sexually oriented business to any other existing sexually oriented business.

D.   The relocation of any sexually oriented business.

**NUDE MODEL STUDIO**

Any place where a person who appears in a state of nudity or displays specified anatomical areas is provided to be observed, sketched, drawn, painted, sculptured, photographed or similarly depicted by other persons who pay money or any form of consideration.

**NUDITY OR STATE OF NUDITY**

The appearance of a human bare buttock, anus, male genitals, female genitals or female breast.

**PERMITTEE AND/OR LICENSEE**

A person in whose name a permit and/or license to operate a sexually oriented business has been issued, as well as the individual listed as an applicant on the application for a permit and/or license.

**PERSON**

An individual, proprietorship, partnership, corporation, association or other legal entity.

**SEMINUDE**

A state of dress in which clothing covers no more than the genitals, pubic region and areolae of the female breast, as well as portions of the body covered by supporting straps or devices.

**SEXUAL ENCOUNTER CENTER**

A business or commercial enterprise that, as one of its primary business purposes, offers for any form or consideration:

A.   Physical contact in the form of wrestling or tumbling between persons of the opposite sex.

B.   Activities between male and female persons and/or persons of the same sex when one or more of the persons is in a state of nudity or is seminude.

**SEXUALLY ORIENTED BUSINESS**

An adult arcade, adult bookstore or adult video store, adult cabaret, adult motel, adult motion-picture theater, adult theater, escort agency, nude model studio or sexual encounter center.

**SPECIFIED ANATOMICAL AREAS**

The male genitals in a state of sexual arousal and/or the vulva or more intimate parts of the female genitals.

**SPECIFIED SEXUAL ACTIVITIES**

Includes any of the following:

A.   The fondling or other erotic touching of human genitals, pubic region, buttocks, anus or female breasts.

B.   Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation or sodomy.

C.   Masturbation, actual or simulated.

D.   Excretory functions as part of or in connection with any of the activities set forth in Subsections **A** through **C** above.

**SUBSTANTIAL ENLARGEMENT OF A SEXUALLY ORIENTED BUSINESS**
The increase in floor area occupied by the business by more than 25%, as the floor areas exist on June 25, 1990.

**TOWNSHIP**
The Township of Upper Merion.

**TRANSFER OF OWNERSHIP OR CONTROL OF A SEXUALLY ORIENTED BUSINESS**
Includes any of the following:

A.   The sale, lease or sublease of the business.

B.   The transfer of securities which constitute a controlling interest in the business, whether by sale, exchange or similar means.

C.   The establishment of a trust, gift or other similar legal device which transfers the ownership or control of the business, except for transfer by bequest or other operation of law upon death of the person possessing the ownership or control.

## § 165-267. Classification.

Sexually oriented businesses are classified as follows:

A.   Adult arcades.

B.   Adult bookstores or adult video stores.

C.   Adult cabarets.

D.   Adult motels.

E.   Adult motion-picture theaters.

F.   Adult theaters.

G.   Escort agencies.

H.   Nude model studios.

I.   Sexual encounter centers.

## § 165-268. Permit required.

A.   Any person who operates a sexually oriented business without a valid permit issued by the Township is guilty of a violation of this chapter.

B.   An application for a permit to operate a sexually oriented business must be made on a form provided by the Building Official of the Township. The application must be accompanied by a sketch or diagram showing the configuration of the premises, including a statement of total floor

**EXHIBIT D**



# Lipsitz Green Scime Cambria LLP

Attorneys at Law

42 Delaware Avenue, Suite 120, Buffalo, New York 14202-3924  P 716 849 1333  F 716 855 1580 (Not for Service)  www.lglaw.com

Paul J. Cambria, Jr.[1,3,6]
James T. Scime
Herbert L. Greenman
Michael Schiavone
Laraine Kelley
Richard P. Weisbeck, Jr.
Mark L. Stulmaker
Barry Nelson Covert
Robert L. Boreanaz
Thomas M. Mercure
John A. Collins
Michael P. Stuermer[3]
Jeffrey F. Reina
Cherie L. Peterson
Joseph J. Manna
William P. Moore
Thomas C. Burnham
Jonathan W. Brown[3]
Diane M. Perri Roberts
Matthew B. Morey
Sharon M. Heim
Paul J. Cieslik
Gregory P. Krull
Robert E. Ziske
Patrick J. Mackey[4]
Max Humann
Katherine A. Gillette
Lynn M. Bochenek
Joseph L. Guza
Richard A. Maltese, Jr.
Justin D. Ginter
Erin McCampbell Paris
Jeffrey B. Novak
Lucy M. Berkman[3]
Dale J. Bauman[3,6]
Micelle M. Ragusa
Karoline R. Faltas
Melissa D. Wischerath[7]
Alexander E. Basinski
Taylor D. Golba
Maxwell A. Whitenight
Patricia A. Foy
Todd J. Aldinger
Christina M. Croglio

OF COUNSEL
Patrick C. O'Reilly
Joseph J. Gumkowski
George E. Riedel, Jr.[3]

SPECIAL COUNSEL
Richard D. Furlong
Scott M. Schwartz
Mark S. Corney
Robert A. Scalione[2]

LICENSED WORKERS'
COMPENSATION
REPRESENTATIVE
Keith T. Williams
Patricia N. Lyman

[1] Also admitted in District of Columbia
[2] Also admitted in Florida
[3] Also admitted in California
[4] Also admitted in Illinois
[5] Also admitted in Pennsylvania
[6] Also admitted in New Jersey
[7] Also admitted in Oregon

October 16, 2019

Planning and Development Office
Upper Merion Township
15 West Valley Forge Road
King of Prussia, PA 19406

    RE:    143 S. Gulph Road, King of Prussia, PA 19406

To Whom it May Concern:

    Please be advised that I represent Video Management Industries, Inc., which operates a number of retail establishments throughout Pennsylvania under the name "Excitement Adult Superstores." I am writing in regard to the Sexually Oriented Business Provisions in the Upper Merion Township Code of Ordinances.

    In *World Wide Video of Washington, Inc. v. City of Spokane*, 368 F.3d 1186 (9th Cir. 2004), an adult-oriented retailer challenged, *inter alia*, Spokane's definition of "adult retail establishment." That term was defined as "an enclosed building, or any portion thereof which . . . devotes a *significant or substantial* portion of its stock in trade, to the sale . . . of 'adult oriented merchandise.'" *Id.* at 1198 (emphasis added). In rejecting the plaintiff's challenge to the terms "significant or substantial" as vague without further descriptors, such as a percentage requirement, the Ninth Circuit explained that "[c]ases directly addressing [this] phrase . . . in this context have upheld its validity" because "this phrase is readily susceptible to a narrowing construction." *Id.* 1198-99. "Language similar to the 'significant or substantial' language used in this ordinance has been interpreted previously be state courts in a sufficiently narrow manner to avoid constitutional problems." *Id.* at 1199 (quoting *Z.J. Gifts D-4, LLC v. City of Littleton*, 311 F.3d 1220, 1229 (10th Cir. 2002)).

    In *Z.J. Gifts*, an adult-oriented retailer challenged, as vague, "the definition of an 'adult bookstore, adult novelty store, or adult video store' as a business that 'devotes a significant or substantial portion' of its floor space, inventory or advertising to adult materials, or that obtains 'a significant or substantial portion' of its revenue from those materials." *Z.J. Gifts*, 311 F.3d at 1228. In rejecting the store's claim, the court explained that "the 'significant or substantial' language used in this ordinance has been interpreted previously by state courts in a sufficiently narrow manner to avoid constitutional problems." *Id.* at 1229.



## Lipsitz Green Scime Cambria LLP

The court recognized that "[a] common method of narrowing construction has been to develop a percentage that will act as a guide as to what constitutes 'significant or substantial.'" *Id.* The Tenth Circuit cited three cases that address such percentages: *Dandy Co. v. Civil City of South Bend*, 401 N.E.2d 1380, 1385-86 (Ind. Ct. App. 1980) (50-80% ); *St. Louis Cnty. v. B.A.P., Inc.*, 25 S.W.3d 629, 630-31 (Mo. Ct. App. 2000) ("more than twenty-five percent"); *City of New York v. Les Hommes*, 724 N.E.2d 368, 370 (N.Y. 1999) ("at least forty percent").

Additionally, in *Cnty. of San Diego v. 1560 N. Magnolia Ave., LLC*, 2009 WL 354469 (Cal. App. 4th Dist. Feb. 13, 2009), the court summarized the narrowing constructions of California state courts. *Id.* at *7. It appears that, if a store's inventory accounts for fifty percent or more, it falls within "significant or substantial." However, it is unclear whether an ordinance setting the percentage at 25%, a much lower threshold, would be considered "substantial."

In *Carousel Snack Bars of Minnesota, Inc., v. Crown Const. Co.*, 439 F.2d 280 (3d Cir. 1971), the Third Circuit examined a lease agreement that required the tenant (defendant) to operate a kiosk "that has as its principal business the sale of such items as popcorn, caramel corn," etc. Id. at 281. Plaintiff alleged that defendant breached the terms of the lease agreement, and sued for injunctive relief. See id. The Third Circuit found that "[w]hether [defendant] sells the covered products as its principal business purpose depends on whether the percentage of [defendant's] total sales represented by these items *exceeds 50%*." Id. at 283 (emphasis added).

The statute at bar uses similar language – "one of its principal business purposes" – with regard to Adult Bookstores and Adult Video Stores. As noted above, the term "principal business purpose" has been defined by the Third Circuit in *Carousel Snacks*. In light of this holding, the language in the Township Code requires that more than fifty percent of a commercial establishment's inventory must be adult before it may be considered an Adult Bookstore or Adult Video Store.

In light of these Constitutional issues and the Third Circuit's holding in *Carousel Snacks*, I recommend that the Township establish a threshold percentage of fifty percent which quantifies the terms used in the Township Code. Such an amendment would provide clear guidance to members of your community and would avoid litigation of the Code.



# Lipsitz Green Scime Cambria LLP

Very truly yours,

Lipsitz Green Scime Cambria, LLP

Paul J. Cambria, Jr., Esq.



**EXHIBIT E**



**Kaplin | Stewart**
*Attorneys at Law*

Amee S. Farrell
Direct Dial: (610) 941-2547
Direct Fax: (610) 684-2010
Email: afarrell@kaplaw.com
www.kaplaw.com

December 17, 2019

**HAND DELIVERY**

Mark Zadroga
Upper Merion Township
175 West Valley Forge Road
King of Prussia, PA 19406

RE:   **Use Permit Application - 143 S. Gulph Road**

Dear Mark:

As we previously discussed, this office represents ES IV, LLC ("Tenant") in connection with its proposed rental of approximately 4500 s.f. of tenant space at the above noted property ("Leasehold"). Tenant proposes to fit out the Leasehold with a general retail (smoke shop) use, with an accessory/non-principal 975 s.f. general retail (adult use).

Enclosed for processing and issuance of the requisite use permit are the following:

1. One (1) original and one (1) copy of a Use & Occupancy Permit Application, on the Township's proscribed form;

2. One (1) original and one (1) copy of a Proposed Plan, dated December 17, 2019, prepared by rkc Architects, depicting the proposed layout; and

3. A check, in the amount of One Hundred Twenty-Five Dollars ($125.00), payable to Upper Merion Township, which I understand to be the applicable filing fee.

Please note the within application is for a use permit only. Once authorized for use, the landlord will submit the requisite drawings for the interior fit-out and an occupancy permit will be requested.

**Kaplin Stewart**
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA  19422-0765
610-260-6000 tel

*Offices in*
Pennsylvania
New Jersey

Mark Zadroga
December 17, 2019
Page 2
_____

Please do not hesitate to contact me if I can be of any assistance. As always, I thank you for your considerate attention to this matter.

Sincerely,

Amee S. Farrell

ASF:asf

Enclosures

Dec  16  2019  06:10PM  HP  Fax  610-687-1875            page  1

# Use & Occupancy Permit Application

Upper Merion Twp.
175 W. Valley Forge Rd.
King of Prussia, PA  19406
610-205-8507/8508
Permits Office

Permit #: _____

Fee: _____

Date completed application received: _____

Payment must accompany application. All Highlighted sections must be completed.

Application is hereby made to use ±4500 s.f.    for   General Retail/Commercial
                                                square feet    Use( Residential, Commercial, Industrial, etc.)

Lease Dates: 10 year initial term
(for commercial applications)

Occupancy Date: TBD/upon approval   at   143 S. Gulph Road

OR Do you already occupy this space? _____    Address: ** Include Suite # If known (for commercial applications)

**MUST CONFIRM ANY NEW SUITE #'S WITH DEPUTY FIRE MARSHAL PRIOR TO OCCUPANCY   610-205-8554

Describe use in detail: General Retail - see enclosed floor plan

Property
Owner:
Rose M. Riley
                                                    name
524 Atterbury Rd, Villanova, PA  19085
                                                    address/zip code
Contact Applicant's Counsel See below

Tenant:
ES IV, LLC c/o Amee S. Farrell, Esquire  Kaplin Stewart
            phone                    fax                      e-mail
910 Harvest Drive, P.O. Box 3037, Blue Bell, PA  19422
                                      name
Home Office address/zip code
(610) 941-2547                                          afarrell@kaplaw.com
      phone                      fax                        e-mail

Contractor:
N/A: Application relates to use only
                                      name

                                  address/zip code

      phone                      fax                        e-mail

_____              _____
signature of owner                      signature of applicant

12.16.19                          By: Amee S. Farrell, Counsel for Applicant
      date                                    12/17/19
                                                  date

Contact for Inspection: Amee S. Farrell      Phone/email: afarrell@kaplaw.com

FOR OFFICE USE ONLY:
Zoning District: _____   Approved: _____      Denied: _____

Applicable Business Taxes:      Contact Bus. Tax Office: 610-265-2600
                  Amusement Tax - 93-611, as amended
                  Business Privilege Tax - 93-608, as amended
                  Mercantile Tax - 93-608, as amended
                  _____ Wholesale
                  _____ Retail
                  _____ Wholesale & Retail

INSPECTION REQUIRED
Prior to opening to Public, applicant must
obtain approval from Safety & Codes
Enforcement Dept.
48 Hrs. advance notice required to schedule
inspection.  610-205-8554



**EXHIBIT F**



13371-7

# UPPER MERION TOWNSHIP
## CODE ENFORCEMENT

175 WEST VALLEY FORGE ROAD
KING OF PRUSSIA, PA 19406-1802
610-265-2606
FAX: 610-265-8467
www.umtownship.org

**BOARD OF SUPERVISORS**

GREG WAKS
CHAIRPERSON

CAROLE KENNEYS
VICE-CHAIRPERSON

TINA GARZILLO
WILLIAM JENAWAY, PhD
GREG PHILIPS

**TOWNSHIP MANAGER/
SECRETARY-TREASURER**

ANTHONY HAMADAY

**TOWNSHIP SOLICITOR**

FIRM OF:
HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN, P.C.

January 9, 2020

Amee S. Farrell, Esq.
Kaplan Stewart
Union Meeting Corporate Center
910 Harvest Drive
Blue Bell, PA 19422-0765

**<u>Re: 143 South Gulph Road King of Prussia, PA 19406</u>**

Dear Amee:

I have completed my review of the use and occupancy permit application submitted on December 17, 2019, for the above referenced property. According to the site plan submitted with the application, the proposed use of the property, located in the General Commercial Zoning District includes 3,525 s.f. for general retail and 975 s.f. for an unspecified adult use.

Please be advised that Article XIX, Section 165-105 of Chapter 165 of the Township Code does not permit an adult use in the General Commercial Zoning District. In addition, an adult use must comply with Article XXXVIII; titled Sexually Oriented Businesses and Article XXXIX; titled Obscenity and Other Sexual Materials of the Township's Zoning Code. No additional information regarding compliance was submitted. Therefore, the use and occupancy application is denied.

You are hereby advised that you have the right to appeal this determination to the Upper Merion Township Zoning Hearing Board within thirty (30) days of the date of this letter in accordance with the procedures set forth in the Code.

If you have any questions, please do not hesitate to contact me at 610-205-8511.

Sincerely,

Mark A. Zadroga
Director of Code Enforcement

RECEIVED
JAN 1 5 2020

C: A. Hamaday, Twp. Manager
J. McGrory, Twp. Solicitor

Copy of this letter mailed first class and emailed to afarrell@kaplaw.com

*What people do for themselves dies with them; what people do for their community lives on ...*

**EXHIBIT G**



**Kaplin | Stewart**
*Attorneys at Law*

**Amee S. Farrell**
Direct Dial: (610) 941-2547
Direct Fax: (610) 684-2010
Email: afarrell@kaplaw.com
www.kaplaw.com

January 22, 2019

**HAND DELIVERY**

Mark Zadroga
Upper Merion Township
175 West Valley Forge Road
King of Prussia, PA 19406

RE:   **Use Permit Application - 143 S. Gulph Road**

Dear Mark:

As you are aware, this office represents ES IV, LLC ("Tenant") in connection with its proposed rental of approximately 4,500 s.f. of tenant space at the above noted property ("Leasehold"). On behalf of the Tenant, we submitted a Use Application to the Township on or about December 17, 2019, wherein we indicated that the Leasehold was intended for a general retail use, a small portion of which was of an adult nature.

By letter dated January 9, 2020, your office responded that the use was denied because: (i) an "adult use" is not permitted in the General Commercial District; and further, (ii) that "additional information regarding compliance" was not submitted.

We believe that you misapprehended the nature of the use, and accordingly have enclosed a <u>new</u> Use Application, and offer the following additional information in connection therewith.

Tenant proposes to occupy the Leasehold for a general retail use. The items intended for sale include smoke-related items, as well as a small portion of adult-themed products (magazines, books, marital aids, etc.) that are often sold in similar general retail establishments (convenience stores, drug stores, smoke shops, novelty gift stores, gas stations, etc.). These general retail uses are permitted in the General Commercial and Shopping Center Districts in the Township, and indeed, currently exist throughout the Township.

Additionally, §165-266 of the Township Code, which is tangentially referenced in your January 9, 2020 letter, specifically contemplates this type of permissible general retail use and distinguishes it from a more restricted "adult" use by providing as follows:

**Kaplin Stewart**
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA  19422-0765
610-260-6000 tel

*Offices in*
Pennsylvania
New Jersey

6271351v1

Mark Zadroga
January 22, 2019
Page 2

Adult Bookstore or Adult Video Store

A.  A commercial establishment which, as one of its *principal* business purposes, offers for sale or rental for any form of consideration one of more of the following:

1)  Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specific sexual activities or specified anatomical areas.

2)  Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

(Article XXXVIII, Section 165-266, *emphasis added*).

Pursuant to §165-266, where a commercial establishment dedicates *less than a principal* portion of its floor area to adult materials, the use does not meet the definition of an "adult bookstore or adult video store", and accordingly, is considered a general retail use.

The Township Code does not define principal, leaving business owners to guess at its meaning and purpose. I understand that in prior discussion with Paul Cambria, Esquire, another attorney for Tenant, this issue was raised and Mr. Cambria requested that the Township provide a specific definition as to how it measures "principal" in this context (i.e. the applicable threshold percentage that defines the difference between a principal and non-principal use), but that no such percentage has to date been provided. The Township's failure to provide a clear objective standard in this context results in uncertainty and causes delay that it is likely to result in money damages to applicant and other similarly situated business owners.

In the instant matter, as noted on the enclosed floor plan, only 975 s.f. of the 4,500 s.f. (i.e. 21.6%) of the floor area will offer adult materials; which certainly must fall below even the generalized "principal" threshold provided under §165-266.

Accordingly, we have submitted a <u>new</u> Use & Occupancy Permit Application and request, based upon the additional information provided herein, that your office provide a clear objective standard for "principal" as used in §165-266 and issue the requisite use permit to Tenant.

Enclosed in connection therewith are the following:

1.  One (1) original and one (1) copy of a Use & Occupancy Permit Application, on the Township's proscribed form;

2.  One (1) original and one (1) copy of a Proposed Plan, dated December 17, 2019, prepared by rkc Architects, depicting the proposed layout; and

Mark Zadroga
January 22, 2019
Page 3

3. A check, in the amount of One Hundred Twenty-Five Dollars ($125.00), payable to Upper Merion Township, which I understand to be the applicable filing fee.

Please note the within application is for a use permit only. Once authorized for use, the landlord will submit the requisite drawings for the interior fit-out and an occupancy permit will be requested.

Please do not hesitate to contact me if I can be of any assistance. As always, I thank you for your considerate attention to this matter.

Sincerely,

Amee S. Farrell

ASF:asf

Enclosures

Jan 20 2020 04:50PM HP Fax 610-687-1875          page 1

# Use & Occupancy Permit Application

Upper Merion Twp.
175 W. Valley Forge Rd.
King of Prussia, PA 19406
610-205-8507/8508
Permits Office

Permit #: _____
Fee: _____
Date completed application received: _____

| Payment must accompany application. All Highlighted sections must be completed. |

Application is hereby made to use: **4,500 s.f.**  for  **General Retail/Commercial**

Lease Dates: **10 year initial term**   square feet    Use( Residential, Commercial, Industrial, etc.)
(for commercial applications)
Occupancy Date: **TBD/upon approval**  at:  **143 S. Gulph Road**
OR Do you already occupy this space? _____  Address: ** Include Suite # if known (for commercial applications)

**MUST CONFIRM ANY NEW SUITE #'S WITH DEPUTY FIRE MARSHAL PRIOR TO OCCUPANCY   610-205-8554

Describe use in detail: | **General Retail - see enclosed floor plan** |

Property   **Rose M. Riley**
Owner:                                 name
**524 Atterbury Rd., Villanova, PA 19085**
                                 address/zip code
**Contact Applicant's counsel - see below**
          phone                     fax                    e-mail

Tenant:  **ES IV, LLC c/o Amee S. Farrell, Esquire, Kaplin Stewart**
                                 name
**910 Harvest Drive. P.O. Box 3037, Blue Bell, PA 19422**
                         Home Office address/zip code
**(610) 941-2547**                                    afarrell@kaplaw.com
          phone                     fax                    e-mail

Contractor:  **N/A:  Application relates to use only**
                                 name
_____
                         address/zip code
_____
          phone                     fax                    e-mail

_____              _____
      signature of owner                        signature of applicant
      **1/20/2020**                      By: Amee S. Farrell, Counsel for Applicant
          date                                    **1/22/2020**
                                                    date

**Contact for Inspection:** Amee S. Farrell          Phone/email: afarrell@kaplaw.com

| FOR OFFICE USE ONLY: | | |
| Zoning District: _____ | Approved: _____ | Denied: _____ |

Applicable Business Taxes:     Contact Bus. Tax Office: 610-265-2600
     Amusement Tax - 93-611, as amended
     Business Privilege Tax - 93-608, as amended
     Mercantile Tax - 93-606, as amended
        Wholesale
        Retail
        Wholesale & Retail

**INSPECTION REQUIRED**                    **
Prior to opening to Public, applicant must
obtain approval from Safety & Codes
Enforcement Dept.
48 Hrs. advance notice required to schedule
inspection.  610-205-8554

Received
M. Twp. Permit Off.
JAN 22 2020

JAL



**EXHIBIT H**



**UPPER MERION TOWNSHIP**

CODE ENFORCEMENT

175 WEST VALLEY FORGE ROAD
KING OF PRUSSIA, PA 19406-1802
610-265-2606
FAX: 610-265-8467
www.umtownship.org

BOARD OF SUPERVISORS

WILLIAM JENAWAY, PhD
CHAIRPERSON

CAROLE KENNEY
VICE-CHAIRPERSON

TINA GARZILLO
GREG PHILIPS
GREG WAKS

TOWNSHIP MANAGER/
SECRETARY-TREASURER

ANTHONY HAMADAY

TOWNSHIP SOLICITOR

FIRM OF:
HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN, P.C.

February 14, 2020

**Letter mail certified and first class, return receipt requested**

Amee S. Farrell, Esq.
Kaplan Stewart
Union Meeting Corporate Center
910 Harvest Drive
Blue Bell, PA 19422-0765

**Re: 143 South Gulph Road King of Prussia, PA 19406**

Dear Amee:

I received your letter dated January 22, 2020, regarding the above referenced property. Unfortunately, I do not believe that I have misapprehended the nature of the proposed use and furthermore, I do not consider your letter to be a new application. There are no material differences between your previously filed Use and Occupancy Application and the current Use and Occupancy Application, therefore my initial decision to deny your application, as outlined in my January 9, 2020 letter, remains in effect.

The Sexually Oriented Business Section 165-266 of the Township Code states;

Adult Book Store or Adult Video Store:

A. A commercial establishment which, as one of its principal business purposes, offers for sale or rental for any form of consideration any one or more of the following:

    1) Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specified sexual activities or specified anatomical areas.

    2) Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

B. A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as "adult bookstore" or

*What people do for themselves dies with them; what people do for their community lives on ...*

"adult video store." Such other business purposes will not serve to exempt such commercial establishment from being categorized as an "adult bookstore or adult video store" so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe specified sexual activities or specified anatomical areas.

Section 165-266.B clearly indicates that a building can have multiple principal uses with a prohibited adult use being considered one of those principal uses. It also clearly indicates that the existence of other principal uses does not negate the fact that your proposal constitutes an adult use. You are proposing that since only 21% of the floor area is devoted to adult use, that it is not considered a principal use. Obviously, multiple principal uses can have less than 50% of the dedicated floor area and still be considered a principal use. Subparagraph B quoted above clearly contemplates the prospect of multiple principal uses and clearly dictates that the existence of other principal uses does not reclassify what is otherwise an adult use. Nowhere in the code are percentages mentioned for determining principal use, but rather it is the nature of the use that classifies the use as an adult use. Your client is specifically proposing the use as outlined in Section165-266 A(1) and (2). The General Commercial Zoning District prohibits a sexually oriented business, therefore, your Use and Occupancy Permit Application is hereby denied.

You are hereby advised that you have the right to appeal this determination to the Upper Merion Township Zoning Hearing Board within thirty (30) days of the date of this letter in accordance with the procedures set forth in the code. If you have any questions, please do not hesitate to contact me at 610-205-8511.

If you have any questions, please do not hesitate to contact me at 610-205-8511.

Sincerely,

Mark A. Zadroga
Director of Code Enforcement

CC: A. Hamaday, Township Manager
    J. McGrory, Township Solicitor

**EXHIBIT I**



Amee S. Farrell
Direct Dial: (610) 941-2547
Direct Fax: (610) 684-2010
Email: afarrell@kaplaw.com
www.kaplaw.com

March 13, 2020

**HAND DELIVERY**

Mark Zadroga
Zoning Officer
Upper Merion Township
175 West Valley Forge Road
King of Prussia, PA 19406

RE:    **Appeal of Zoning Officer Determination - 143 South Gulph Road**

Dear Mark:

As you know, this office represents ES IV, LLC, in connection with its proposed lease and occupancy of a portion of the property located at 143 South Gulph Road. Enclosed for processing in connection therewith are one (1) original and eight (8) copies of the Upper Merion Township Zoning Hearing Board Application, seeking an appeal of your February 14, 2020 denial of the Use & Occupancy Permit for the proposed use.

Each package includes:

1.   The Appeal to the Zoning Hearing Board, on the Township's proscribed form. Attached to each appeal form are:

    a.   An Addendum to the Application;

    b.   The January 22, 2020 Use and Occupancy Application, with associated floor plan and cover letter; and

    c.   Your office's February 14, 2020 denial letter.

2.   Photographs of the existing conditions of the property.

Also included herewith is a check, payable to Upper Merion Township, in the amount of $1,500.00, which I understand to be the applicable filing fee.

Kindly distribute the within application packets to the appropriate parties and schedule the application for the next available Zoning Hearing Board Hearing.

**Kaplin Stewart**
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA  19422-0765
610-260-6000 tel

*Offices in*
Pennsylvania
New Jersey

Mark Zadroga
March 13, 2020
Page 2

Please date stamp one of the enclosed copies of the Application packet and return to the messenger as proof of filing.

Thank you for your considerate attention to this matter. Please do not hesitate to contact me with any questions.

Sincerely,

Amee S. Farrell

ASF:asf

Enclosures



## Zoning Hearing Board
**Upper Merion Township**
175 W. Valley Forge Road
King of Prussia, PA 19406
610-205-8511   fax 610-265-8467
www.umtownship.org



# UPPER MERION TOWNSHIP ZONING HEARING BOARD APPEAL
# COMMERCIAL  APPLICATION

The following is a list of questions designed to assist you and the Zoning Hearing Board in the efficient and prompt review of your appeal. Please thoroughly answer all questions, which are applicable to your appeal. If you believe the question does not pertain to your appeal, please indicate on this form by answering "not applicable."

> **All questions must be answered to consider this appeal form complete.**

A complete site plan, construction documents and a copy of your deed must be attached to this application. Please return this form to the Zoning Official when you file your application.

### OFFICE USE ONLY

APPEAL # _____                              APPLICATION  FEE $ _____

DATE COMPLETED APPLICATION  RECEIVED        _____

ADVERTISED DATES        _____

**1**

Owner: Rose M. Riley
name

524 Atterbury Road Villanova, PA 19085
address/zip code

Contact Applicant's Counsel | Contact Applicant's Counsel
phone                         fax                           e-mail

Applicant: ES IV, LLC, c/o Amee S. Farrell, Esquire
name

910 Harvest Drive P.O. Box 3037  Blue Bell, PA 19012
address/zip code

610-941-2547                                          afarrell@kaplaw.com
phone                         fax                           e-mail

☐ owner        ☐ equitable owner        ✔ tenant

If the applicant is not the property owner, the applicant must provide a signed and notarized letter from the property owner stating his/her permission to allow the applicant to represent the property owner at the zoning hearing board with this zoning appeal.

**2**  If applicant is represented by an attorney or counsel, please provide:

Name:      Amee S. Farrell, Esquire
Address:   910 Harvest Drive, P.O. Box 3037
           Blue Bell, PA 19012
Telephone: 610-941-2547
E-Mail:    afarrell@kaplaw.com

**3**

Location of Real Estate:    143 South Gulph Road

Tax Parcel #: 58-00-17473-00-1                    Zoning District: GC

Lot Size: 41,203 s.f. (+/-)           Percent of Lot Area Occupied by Existing Buildings: N/A

                                      Percent of Lot Area to be Occupied by Proposed Buildings: N/A

Present Use:  Vacant general retail space                   TOTAL: 4500 s.f.

Date when present use began:  Vacant     Date of acquisition by property owner: 02/2001

Please list each structure and it's use currently located on this property.

General retail building. Space in question currently vacant.

| 4 | Is your home or principal structure connected to: (please circle all that apply) |

public water ✔        public sewer ✔        not presently connected ☐

private on-lot septic        private well ☐

If you are not connected at this time, what type of sewage and water facilities are available to the property?

Have you consulted with adjoining property owners?        ☐ Yes    ✔ No

If yes, indicate responses:

_____

_____

Are there any outstanding state, federal, county or township violations cited on this property at the time of this application? No_____    If yes, please explain:

_____

_____

_____

---

| 5 | Type of Appeal Sought: |

**_You must list all sections of the Upper Merion Township Zoning Ordinance in which you are seeking zoning relief from on the following lines:  (Please note that if this section is not complete, the appeal will not be heard)_**

| ☐ | Special Exception | Applicable: | | |
| | | | Section | Sub-Section |
| ☐ | Variance | Applicable: | | |
| | | | Section | Sub-Section |
| ✔ | Appeal of Zoning Officer's Determination | Applicable: | 165-266 | |
| | | | Section | Sub-Section |
| ☐ | Enforcement Notice Appeal | Applicable: | | |
| | | | Section | Sub-Section |
| ☐ | Other Appeal | Applicable: | | |
| | | | Section | Sub-Section |

State in narrative form the nature of your appeal including the primary relevant facts intended to be presented to the Zoning Hearing Board. Please include a description of all explosive or toxic materials to be stored on this site.  Please reference to your attachment if additional space is needed.

This is an appeal from the February 14, 2020 Zoning Officer Determination which incorrectly determined that Applicant's proposed use constitutes an "Adult Bookstore or Adult Video Store" under Section 165-266 of the Zoning Code. See attached Addendum.

6   What is the exact use proposed for the property?  List the current and proposed hours of operation, number and type of employees, business equipment to be used or stored at the site, nature of normal business operations, if applicable.  Please reference to your attachment if additional space is needed.

General retail, in accordance with 165, Attachment 2, Table CD.1, Permitted Uses.

What is the character of the buildings and uses on abutting properties and what is the general character of the surrounding neighborhood? Please reference your attachment if additional space is needed.

Property and surrounding properties are improved with a mix of general retail.

What will the impact of this use be on existing traffic patterns and volumes for this zoning appeal? Also, please specify the amount of parking spaces and unloading areas as specified in the Upper Merion Township Zoning Ordinance.

N/A. This is an appeal from a Zoning Officer Determination as to permitted use.

Will the zoning relief requested, if authorized, alter the essential character of the neighborhood or district in which the property is located, or substantially or permanently impair the appropriate use of the development of adjacent property, or be detrimental to the public welfare? Please give reasons for your answers to the aforementioned questions by explaining below. Please reference to your attachment if additional space is needed.

N/A. This is an appeal from a Zoning Officer Determination as to permitted use.

Has any previous zoning appeal been filed in connection with this property?  If yes, please list applicant's name, date and nature of appeal.

None related to this use.

I/we believe that the board should approve this request because: (include the grounds for the zoning appeal, or reasons, both with respect to case law and fact, for granting this use requested).

See attached Addendum.

7    In accordance with the Municipalities Planning Code, Act 247, Section 908, it will be necessary for Upper Merion Township to post notice of this hearing. Such posting shall be conspicuously displayed on the affected tract of land or building. Section 908.1.2 requires a hearing within 60 days of this application; a subsequent hearing within 45 days of the prior hearing; the completion of the presentation within 100 days of the hearing and the requirement for at least seven (7) hours of hearings within 100 days, including the first hearing.

I / We hereby waive the provisions of section 908.1.2 of the Municipalities Planning Code

| | yes | | ✔ | |
| --- | --- | --- | --- | --- |
| | yes | | no | |

**I hereby certify that all of the above statements contained in this zoning appeal application and any papers or plans submitted with this zoning appeal to the Upper Merion Township Hearing Board herewith are true and correct to the best of my knowledge and belief.**

Rose M. Riley/ by Amee S. Farrell, Esquire, counsel for Applicant
print name of owner

*Amy S Fa*
signature of owner

3/13/2020
date

ES IV, LLC/by Amee S. Farrell, Esquire
print name of applicant

*Amy S Fa*
signature of applicant

3/13/2020
date

**BEFORE THE ZONING HEARING BOARD OF UPPER MERION TOWNSHIP**

| | |
|---|---|
| IN RE: APPEAL OF ES IV, LLC | : |
| FROM THE UPPER MERION TOWNSHIP | : |
| ZONING OFFICER'S DETERMINATION | : |
| DATED FEBRUARY 14, 2020 | : |

## NOTICE OF APPEAL

ES IV, LLC, (**"Appellant"**), by and through their attorneys, Kaplin Stewart P.C. and Lipsitz Green Scime Cambria, LLP, hereby appeal from the Upper Merion Township Zoning Officer's February 14, 2020 denial of a use and occupancy certificate, and in support hereof, avers as follows:

1.      Appellant is the lessee of 4,500 s.f. (+/-) of commercial retail space (**"Leasehold"**) in the property located at 143 South Gulph Road (**"Property"**), Upper Merion Township (**"Township"**).

2.      At all times material hereto, the Property was located in the Township's General Commercial Zoning District (**"GC-District"**).

3.      On January 22, 2020, Appellant submitted a Use & Occupancy Permit Application (**"U&O Application"**) to the Upper Merion Township Zoning Officer (**"Zoning Officer"**) seeking approval to permit a general retail use within the Leasehold.

4.      Pursuant to *165 Attachment 2, Table CD.1 Permitted Uses*, of the Upper Merion Township Zoning Ordinance (**"Ordinance"**) all manner of general retail uses are permitted in the GC-District, including but not limited to, convenience stores, pharmacies and drugstores, clothing and accessory stores, and gift and novelty stores.

5.      The materials submitted to the Zoning Officer with the U&O Application included a narrative describing the proposed general retail use and a floor plan of the Leasehold.

A copy of the U&O Application is attached hereto as **Exhibit "A"** and incorporated herein by reference.

6.      The U&O Application provided that the general retail use of the Leasehold would principally include the sale of smoke-related items, together with a small portion of adult-themed products (magazines, books, marital aids) that are typically found in other general retail establishments throughout the Township such as, *inter alia*, convenience stores, drug stores, smoke shops, novelty gift shops, and gas stations.

7.      Pursuant to the plan included with the U&O Application, the smoke-related retail component would encompass approximately 78.4% of the Leasehold, while the adult-themed component would account for only 21.6% of the Leasehold (collectively "**Proposed Use**").

8.      General retail uses comprising the same or similar make-ups of non-adult and adult-themed items as the Proposed Use are permitted – and currently operate – in General Commercial and Shopping Center Districts throughout the Township, including, *inter alia*, Spencer's Gifts and similar novelty gift stores, convenience stores, drug stores, and gas stations.

9.      Despite the Township's historic acceptance of this mix of general retail uses in General Commercial and Shopping Center Districts, by letter dated February 14, 2020, the Township Zoning Officer denied the U&O Application ("**Denial**"). A copy of the Denial is attached hereto as **Exhibit "B"** and incorporated herein by reference.

10.     Specifically, the Zoning Officer opined that although it makes up only 21.6% of the total Leasehold, the portion of the Proposed Use which will house adult-themed products constitutes a principal "adult book store or adult video store" which is prohibited in the GC-Commercial District.

2

11.     However, §165-266 of the Ordinance, upon which the Zoning Officer relied in the Denial, specifically contemplates this type of permissible general retail use and distinguishes it from a more restricted "adult" use by providing as follows:

> Adult Bookstore or Adult Video Store
>
> A. A commercial establishment which, as one of its ***principal*** business purposes, offers for sale or rental for any form of consideration one of more of the following:
>
> > 1) Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specific sexual activities or specified anatomical areas.
> >
> > 2) Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.
>
> B. A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as "adult bookstore" or "adult video store." Such other business purposes will not serve to exempt such commercial establishment from being categorized as an "adult bookstore" or "adult video store" so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe specified sexual activities or specified anatomical areas.
>
> (Article XXXVIII, Section 165-266, ***emphasis added***).

12.     Based on the plain language of §165-266, when a commercial establishment dedicates ***less than a principal*** portion of its business purpose to adult materials, the use does not meet the definition of an "adult bookstore or adult video store," and accordingly, is considered a general retail use.

13.     The Ordinance does not define principal, leaving business owners to guess at its meaning and purpose.

3

14.     The Courts, however, have analyzed similar language in both municipal ordinances and private agreements, and have consistently held that the type of broad, undefined language found in the Ordinance must be sufficiently narrowed "to avoid constitutional problems". *See Z.J. Gifts D-4, LLC v. City of Littleton,* 311 F.3d 1220, 1229 (10th Cir.2002) (noting that language in ordinances defining a store as an "adult" store if it devotes a "significant and substantial portion" of floor space, inventory, or revenue to adult materials will be upheld only where the municipality, or if needed the court, narrows the definition of "significant and substantial" in order to avoid constitutional issues.)

15.     The Court in *Z.J. Gifts, supra.,* went on to explain that the typical method used to narrow vague language such as "significant or substantial" is "to develop a percentage that will act as a guide." *Z.J Gifts, supra.* at 1229 (citing *Dandy Co. v. Civil City of South Bend,* 401 N.E.2d 1380, 1385-86 (Ind. Ct. App. 1980) (requiring at least 50-80%); *St. Louis Cnty. v. B.A.P., Inc.,* 25 S.W.3d 629, 630-31 (Mo. Ct. App. 2000) (requiring "more than twenty-five percent"); *City of New York v. Les Hommes,* 724 N.E.2d 368, 370 (N.Y. 1999) (requiring "at least forty percent")). Notably, none of these cases found a *de minimus* percentage, such as the 21.6 percent at issue herein, to pass constitutional muster.

16.     Indeed, in *County of San Diego v. 1560 N. Magnolia Ave., LLC,* 2009 WL 354469 (Cal. App. 4th Dist. Feb. 13, 2009), the court summarized the narrowing constructions; confirming that, if a store's inventory accounts for fifty percent or more, it falls within "significant or substantial," but questioned whether an ordinance setting the percentage at 25% would be considered "substantial." *Id.* at *7.

17.     In the private agreement context, the Third Circuit specifically addressed the question of what constitutes a "principal business use." In *Carousel Snack Bars of Minnesota, Inc., v. Crown Const. Co.*, 439 F.2d 280 (3d Cir. 1971), the Third Circuit examined a lease agreement that required the tenant (defendant) to operate a kiosk "that has as its principal business the sale of such items as popcorn, caramel corn," etc. *Id.* at 281. Plaintiff alleged that defendant breached the terms of the lease agreement and sued for injunctive relief. *Id.* The Third Circuit found that "[w]hether [defendant] sells the covered products as its principal business purpose depends on whether the percentage of [defendant's] total sales represented by these items *exceeds 50%.*" *Id.* at 283 (emphasis added).

18.     Thus, where an ordinance provides a vague, undefined parameter such as "principal" or "significant or substantial" it must provide a narrowing construction (i.e. a percentage, as interpreted by the courts) in order to avoid a constitutional challenge.

19.     In discussion with Paul J. Cambria, Jr., co-counsel for Appellant, this issue was raised with the Zoning Officer and Mr. Cambria requested that the Township provide a specific definition as to how it measures "principal" in this context (i.e. the applicable threshold percentage that defines the difference between a principal and non-principal use).

20.     The Zoning Officer elected not to provide any such percentage.

21.     The Township's failure to provide a clear objective standard in this context results in uncertainty and causes delay that it is likely to result in money damages to applicant and other similarly situated business owners.

22.     Further, the Denial is in direct contravention of the plain language of the Ordinance, violates equal protection, and is an impermissible restriction on free speech.

5

23.     The Zoning Officer's determination that the Proposed Use is prohibited in the GC-Commercial District under §165-266 of the Ordinance is erroneous as a matter of law.

24.     Moreover, because the regulation of adult businesses constitutes content-based regulation, the only reason that the Supreme Court has granted municipalities the leeway to enact such regulations and to analyze them as content-neutral is if, and only if, such regulations are "designed to combat the undesirable secondary effects of such businesses." *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 49 (1986).  Here, there are no findings that allocation of a *de minimus* portion of a store's merchandise and retail space has any impact on the surrounding area, let alone negative secondary effects.

25.     Finally, the Zoning Officer's denial was an arbitrary and capricious application of §165-266 of the Ordinance.

26.     Based upon the foregoing, Appellant respectfully requests that its appeal be sustained and that the Denial be reversed.

Respectfully submitted,

KAPLIN STEWART, P.C.

By: _____

Amee S. Farrell, Esquire
Daniel P. Rowley, Esquire

**Attorneys for Appellant**

Dated: March 13, 2020

6

# EXHIBIT "A"



Amee S. Farrell
Direct Dial: (610) 941-2547
Direct Fax: (610) 684-2010
Email: afarrell@kaplaw.com
www.kaplaw.com

January 22, 2019

<u>HAND DELIVERY</u>

Mark Zadroga
Upper Merion Township
175 West Valley Forge Road
King of Prussia, PA 19406

RE:    <u>Use Permit Application - 143 S. Gulph Road</u>

Dear Mark:

As you are aware, this office represents ES IV, LLC ("Tenant") in connection with its proposed rental of approximately 4,500 s.f. of tenant space at the above noted property ("Leasehold"). On behalf of the Tenant, we submitted a Use Application to the Township on or about December 17, 2019, wherein we indicated that the Leasehold was intended for a general retail use, a small portion of which was of an adult nature.

By letter dated January 9, 2020, your office responded that the use was denied because: (i) an "adult use" is not permitted in the General Commercial District; and further, (ii) that "additional information regarding compliance" was not submitted.

We believe that you misapprehended the nature of the use, and accordingly have enclosed a <u>new</u> Use Application, and offer the following additional information in connection therewith.

Tenant proposes to occupy the Leasehold for a general retail use. The items intended for sale include smoke-related items, as well as a small portion of adult-themed products (magazines, books, marital aids, etc.) that are often sold in similar general retail establishments (convenience stores, drug stores, smoke shops, novelty gift stores, gas stations, etc.). These general retail uses are permitted in the General Commercial and Shopping Center Districts in the Township, and indeed, currently exist throughout the Township.

Additionally, §165-266 of the Township Code, which is tangentially referenced in your January 9, 2020 letter, specifically contemplates this type of permissible general retail use and distinguishes it from a more restricted "adult" use by providing as follows:

Kaplin Stewart
Union Meeting Corporate Center
910 Harvest Drive, P.O. Box 3037
Blue Bell, PA  19422-0765
610-260-6000 tel

Offices in
Pennsylvania
New Jersey

6271351v1

Mark Zadroga
January 22, 2019
Page 2

Adult Bookstore or Adult Video Store

A.  A commercial establishment which, as one of its *principal* business purposes, offers for sale or rental for any form of consideration one of more of the following:

   1) Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specific sexual activities or specified anatomical areas.

   2) Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

(Article XXXVIII, Section 165-266, *emphasis added*).

Pursuant to §165-266, where a commercial establishment dedicates *less than a principal* portion of its floor area to adult materials, the use does not meet the definition of an "adult bookstore or adult video store", and accordingly, is considered a general retail use.

The Township Code does not define principal, leaving business owners to guess at its meaning and purpose. I understand that in prior discussion with Paul Cambria, Esquire, another attorney for Tenant, this issue was raised and Mr. Cambria requested that the Township provide a specific definition as to how it measures "principal" in this context (i.e. the applicable threshold percentage that defines the difference between a principal and non-principal use), but that no such percentage has to date been provided. The Township's failure to provide a clear objective standard in this context results in uncertainty and causes delay that it is likely to result in money damages to applicant and other similarly situated business owners.

In the instant matter, as noted on the enclosed floor plan, only 975 s.f. of the 4,500 s.f. (i.e. 21.6%) of the floor area will offer adult materials; which certainly must fall below even the generalized "principal" threshold provided under §165-266.

Accordingly, we have submitted a new Use & Occupancy Permit Application and request, based upon the additional information provided herein, that your office provide a clear objective standard for "principal" as used in §165-266 and issue the requisite use permit to Tenant.

Enclosed in connection therewith are the following:

1.  One (1) original and one (1) copy of a Use & Occupancy Permit Application, on the Township's proscribed form;

2.  One (1) original and one (1) copy of a Proposed Plan, dated December 17, 2019, prepared by rkc Architects, depicting the proposed layout; and

Mark Zadroga
January 22, 2019
Page 3

3.  A check, in the amount of One Hundred Twenty-Five Dollars ($125.00), payable to Upper Merion Township, which I understand to be the applicable filing fee.

Please note the within application is for a use permit only. Once authorized for use, the landlord will submit the requisite drawings for the interior fit-out and an occupancy permit will be requested.

Please do not hesitate to contact me if I can be of any assistance. As always, I thank you for your considerate attention to this matter.

Sincerely,

Amee S. Farrell

ASF:asf

Enclosures

Jan 20 2020 04:50PM HP Fax 610-687-1875          page 1

# Use & Occupancy Permit Application

Upper Merion Twp.
175 W. Valley Forge Rd.
King of Prussia, PA 19406
610-205-8507/8508
Permits Office

Permit #: _____

Fee: _____

Date completed application received: _____

Payment must accompany application. All Highlighted sections must be completed.

Application is hereby made to use: **4,500 s.f.**  for  **General Retail/Commercial**
Lease Dates: **10 year initial term**          square feet            Use( Residential, Commercial, Industrial, etc.)
(for commercial applications)
Occupancy Date: **TBD/upon approval**   at: **143 S. Gulph Road**
OR Do you already occupy this space? _____   Address: ** Include Suite # if known (for commercial applications)
**MUST CONFIRM ANY NEW SUITE #'S WITH DEPUTY FIRE MARSHAL PRIOR TO OCCUPANCY   610-265-8554

Describe use in detail: **General Retail - see enclosed floor plan**

Property
Owner:  **Rose M. Riley**
                              name
       **524 Atterbury Rd., Villanova, PA 19085**
                         address/zip code
       **Contact Applicant's counsel - see below**
              phone                    fax                    e-mail

Tenant:  **ES IV, LLC c/o Amee S. Farrell, Esquire, Kaplin Stewart**
                              name
       **910 Harvest Drive, P.O. Box 3037, Blue Bell, PA 19422**
                    Home Office address/zip code
       **(610) 941-2547**                              **afarrell@kaplaw.com**
              phone                    fax                    e-mail

Contractor: **N/A: Application relates to use only**
                              name

       _____
                         address/zip code

       _____
              phone                    fax                    e-mail

_____          _____
       signature of owner                   signature of applicant
   **1/20/2020**                      By: Amee S. Farrell, Counsel for Applicant
              date                              **1/22/2020**
                                                   date

Contact for Inspection: **Amee S. Farrell**        Phone/email: **afarrell@kaplaw.com**

**FOR OFFICE USE ONLY:**

| Zoning District: _____ | Approved: _____ | Denied: _____ |

Applicable Business Taxes:        Contact Bus. Tax Office: 610-265-2600
                    Amusement Tax - 93-611, as amended
                    Business Privilege Tax - 93-608, as amended
                    Mercantile Tax - 93-608, as amended
                        _____ Wholesale
                        _____ Retail
                        _____ Wholesale & Retail

**INSPECTION REQUIRED**                              **
Prior to opening to Public, applicant must
obtain approval from Safety & Codes
Enforcement Dept.
48 Hrs. advance notice required to schedule
inspection. 610-205-8554

EXHIBIT "B"



# UPPER MERION TOWNSHIP
## CODE ENFORCEMENT

175 WEST VALLEY FORGE ROAD
KING OF PRUSSIA, PA 19406-1802
610-265-2606
FAX: 610-265-8467
www.umtownship.org

**BOARD OF SUPERVISORS**

WILLIAM JENAWAY, PhD
CHAIRPERSON

CAROLE KENNEY
VICE-CHAIRPERSON

TINA GARZILLO
GREG PHILIPS
GREG WAKS

**TOWNSHIP MANAGER/
SECRETARY-TREASURER**

ANTHONY HAMADAY

**TOWNSHIP SOLICITOR**

FIRM OF:
HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN, P.C.

February 14, 2020

<u>Letter mail certified and first class, return receipt requested</u>

Amee S. Farrell, Esq.
Kaplan Stewart
Union Meeting Corporate Center
910 Harvest Drive
Blue Bell, PA 19422-0765

<u>Re: 143 South Gulph Road King of Prussia, PA 19406</u>

Dear Amee:

I received your letter dated January 22, 2020, regarding the above referenced property. Unfortunately, I do not believe that I have misapprehended the nature of the proposed use and furthermore, I do not consider your letter to be a new application. There are no material differences between your previously filed Use and Occupancy Application and the current Use and Occupancy Application, therefore my initial decision to deny your application, as outlined in my January 9, 2020 letter, remains in effect.

The Sexually Oriented Business Section 165-266 of the Township Code states;

Adult Book Store or Adult Video Store:

A. A commercial establishment which, as one of its principal business purposes, offers for sale or rental for any form of consideration any one or more of the following:

1) Books, magazines, periodicals or other printed matter or photographs, films, motion picture, videocassettes or video reproductions, slides or other visual representations which depict or describe specified sexual activities or specified anatomical areas.

2) Instruments, devices or paraphernalia which are designed for use in connection with specified sexual activities.

B. A commercial establishment may have other principal business purposes that do not involve the offering for sale or rental of material depicting or describing specified sexual activities or specified anatomical areas and still be categorized as "adult bookstore" or

"adult video store." Such other business purposes will not serve to exempt such commercial establishment from being categorized as an "adult bookstore or adult video store" so long as one of its principal business purposes is the offering for sale or rental for consideration the specified materials which depict or describe specified sexual activities or specified anatomical areas.

Section 165-266.B clearly indicates that a building can have multiple principal uses with a prohibited adult use being considered one of those principal uses. It also clearly indicates that the existence of other principal uses does not negate the fact that your proposal constitutes an adult use. You are proposing that since only 21% of the floor area is devoted to adult use, that it is not considered a principal use. Obviously, multiple principal uses can have less than 50% of the dedicated floor area and still be considered a principal use. Subparagraph B quoted above clearly contemplates the prospect of multiple principal uses and clearly dictates that the existence of other principal uses does not reclassify what is otherwise an adult use. Nowhere in the code are percentages mentioned for determining principal use, but rather it is the nature of the use that classifies the use as an adult use. Your client is specifically proposing the use as outlined in Section165-266 A(1) and (2). The General Commercial Zoning District prohibits a sexually oriented business, therefore, your Use and Occupancy Permit Application is hereby denied.

You are hereby advised that you have the right to appeal this determination to the Upper Merion Township  Zoning Hearing Board within thirty (30) days of the date of this letter in accordance with the procedures set forth in the code. If you have any questions, please do not hesitate to contact me at 610-205-8511.

If you have any questions, please do not hesitate to contact me at 610-205-8511.

Sincerely,

Mark A. Zadroga
Director of Code Enforcement

CC: A. Hamaday, Township Manager
    J. McGrory, Township Solicitor



Application of ES IV, LLC
143 South Gulph Road





Application of ES IV, LLC
143 South Gulph Road



Application of ES IV, LLC
143 South Gulph Road



Application of ES IV, LLC
143 South Gulph Road

**EXHIBIT J**



# Eastburn and Gray, PC

Attorneys at Law

**Marc D. Jonas**
470 Norristown Road, Suite 302
Blue Bell, PA 19422
Direct: 215-542-9345
Fax: 215-542-9421
mjonas@eastburngray.com

August 7, 2020

**VIA FIRST CLASS MAIL**
Amee S. Farrell, Esquire
Craig Robert Lewis, Esquire
Kaplin Stewart
910 Harvest Drive
Blue Bell, PA 19422

      RE:    **Zoning Hearing Board of Upper Merion Township**
              **Application of ES IV, LLC**
              **Application No. 2020-08**
              **Property: 143 South Gulph Road**

Counsel:

      Enclosed is the decision of the Upper Merion Township Zoning Hearing Board which you received by email on Wednesday, August 5.

              Very truly yours,

              Marc D. Jonas

MDJ/gc

cc:  Bernadette A. Kearney, Esq., via email

---

Date of Mailing: <u>August 5, 2020</u>

**ZONING HEARING BOARD OF UPPER MERION TOWNSHIP**
**MONTGOMERY COUNTY, PENNSYLVANIA**
**APPLICATION OF: ES IV, LLC**
**APPLICATION NO. 2020-08**
**PROPERTY: 143 SOUTH GULPH ROAD**

**<u>DECISION</u>**

This application concerns an untimely appeal of a zoning officer's determination. The zoning officer reaffirmed his previous denial of a use and occupancy application for the reason that the Landowner's proposed use constitutes a Sexually Oriented Business, a use not permitted in the GC General Commercial zoning district (the "GC District") of the Upper Merion Township Zoning Ordinance of 1942, as Amended ("Zoning Ordinance"),

In his first determination, the zoning officer concluded:

> Please be advised that Article XIX, Section 165-105 of Chapter 165 of the Township Code does not permit an adult use in the General Commercial Zoning District….

[Ex. ZHB-8]. The zoning officer advised the requesting attorney of the right to appeal this first determination:

> You are hereby advised that you have the right to appeal this determination to the Upper Merion Township Zoning Hearing Board within thirty (30) days of the date of this letter in accordance with the procedures set forth in the Code.

[Ex. ZHB-8].

The Upper Merion Township Zoning Hearing Board (the "ZHB") denied the appeal of the second determination for lack of subject matter jurisdiction.

## PROCEDURAL BACKGROUND

On December 17, 2019, ES IV, LLC ("Landowner") submitted a use and occupancy ("U&O") application with a cover letter and plans to use a 4,500 sq. ft. space located at 143 South Gulph Road (the "Property") for "general retail (smoke shop) use, with an accessory/non-principal...general retail (adult use)." On January 9, 2020, the Upper Merion Township ("Township") Zoning Officer issued a letter denying the U&O application, stating that an "adult use" is not permitted in the GC District. Landowner did not appeal the January 9, 2020 determination letter.

On January 22, 2020, Landowner submitted a second U&O application consisting of the same application and plan, but with a different transmittal letter, requesting a second determination for the same property and the same use. In the transmittal letter, Landowner acknowledged the prior application and denial, but asserted that the Zoning Officer had "misapprehended the nature of the use" in his denial letter. The cover letter stated that the proposed use would contain "a small portion of adult-themed products (magazines, books, marital aides, etc.)."

On February 14, 2020, the Zoning Officer issued a letter to the Landowner stating that he did not consider the second use and occupancy application to be a new application because it was not materially different from the first, and that his initial determination denying the application remained in effect.

On March 16, 2020, Landowner filed an appeal to the ZHB. The appeal challenged the Zoning Officer's February 14, 2020 determination, but did not request any other zoning relief.

2

On July 15, 2020, the ZHB held a virtual public hearing[1] on Landowner's appeal. The following ZHB members were present at the hearing: Mark S. DePillis, Esq., Chairman; M Jonathan Garzillo, Vice-Chairman; Maria Mengel, member; John M. Tallman, Jr., member; Vivian Peikin, Esq., member; and Hedda Schupak, alternate. The ZHB was represented by Marc D. Jonas, Esq., and Zachary A. Sivertsen, Esq., of the law firm of Eastburn and Gray, P.C. Landowner was represented by Craig Robert Lewis, Esq., of the law firm of Kaplin Stewart Meloff Reiter & Stein, P.C. The Township appeared in opposition to the appeal, represented by Bernadette A. Kearney, Esq., of the law firm of Hamburg, Rubin, Mullin, Maxwell, & Lupin.

After careful consideration, the ZHB makes the following findings of fact and conclusions of law:

## I.   **FINDINGS OF FACT**

### BACKGROUND

1.      The Property is located at 143 South Gulph Road, King of Prussia, PA, tax parcel no. 58-00-01743-00-1. [Ex. ZHB-1]

2.      The Property is located in the Township's GC District. [Ex. ZHB-1].

3.      Landowner is the lessee of 4,500 sq. ft. of commercial retail space in the Property, and was authorized by the owner of the Property to bring this appeal. [Exs. ZHB-2; ZHB-3]

4.      Landowner proposes to fit out the 4,500 sq. ft. of leased space with what Landowner describes as, a "general retail" use selling "smoke-related items," and an

---

[1] The virtual hearing was held via WebEx, as permitted by Act 2020-15, which authorizes political subdivisions subject to the COVID-19 disaster emergency declaration to conduct business through an authorized telecommunications device.   The virtual hearing was conducted in accordance with the requirements set forth in 35 Pa.C.S. § 5741.

"adult" use selling "adult-themed products (magazines, books, marital aids)." [Ex. ZHB-1, p.7; ZHB-4].

5.     Section 165-105 of the Zoning Ordinance does not permit an adult use in the GC District.

6.     On December 17, 2020, Landowner submitted a U&O permit application for the Property with an architectural floor plan (the "First U&O Application"). [Ex. ZHB-7].

7.     The architectural floor plan submitted with the First U&O Application depicted 3,525 sq. ft. of the leased space devoted to "general retail" use and 975 sq. ft. (21% of the leased floor area) devoted to "adult" use. [Ex. ZHB-7].

8.     On January 9, 2020, the Zoning Officer issued a determination letter denying the First U&O Application (the "First Determination Letter").  [Ex. ZHB-8].

9.     In the First Determination Letter, the Zoning Officer stated the basis for denial of the application as follows:

> Please be advised that Article XIX, Section 165-105 of Chapter 165 of *the Township Code does not permit an adult use in the General Commercial Zoning District*. In addition, an adult use must comply with Article XXXVIII; titled Sexually Oriented Businesses and Article XXXIX; titled Obscenity and Other Sexual Materials of the Township's Zoning Code. No additional information regarding compliance was submitted. Therefore, the use and occupancy application is denied.

[Ex. ZHB-8] (Emphasis added.)

10.     The First Determination Letter advised Landowner that it had "the right to appeal this determination to the Upper Merion Township Zoning Hearing Board within thirty (30) days of the date of this letter in accordance."  [Ex. ZHB-8].

11.     Landowner did not appeal the First Determination Letter.

12.    On January 22, 2020, Landowner submitted a second U&O permit application for the Property (the "Second U&O Application") proposing the same use.

13.    An identical architectural floor plan was submitted with the Second U&O Application. [Ex. ZHB-4].

14.    On February 14, 2020, the Zoning Officer issued a letter denying the Second U&O Application (the "Second Letter").  [Ex. ZHB-10].

15.    In the Second Letter, the Zoning Officer stated the basis for denial  of the permit as follows:

> I do not believe that I have misapprehended the nature of the proposed use and furthermore, I do not consider your letter to be a new application. There are no material differences between your previously filed Use and Occupancy Application and the current Use and Occupancy Application, therefore **_my initial decision to deny your application, as outlined in my January 9, 2020 letter, remains in effect_**.

[ZHB-10] (Emphasis added.)

16.    Landowner appealed the Second Letter to the ZHB. [ZHB-1].

## ZHB HEARING

17.    The following ZHB exhibits were made part of the record:

**ZHB-1**    application and notice of appeal comprising 6 pages, including:

Ex. A    letter dated January 22, 2019 from Amee S. Farrell, Esq. to Mark Zadroga, Zoning Officer, with attached U&O permit application dated January 22, 2020

Ex. B    letter dated February 14, 2020 from Mark Zadroga, Zoning Officer, to Amee S. Farrell, Esq.

**ZHB-2**   deed dated February 2, 2001 between South Gulph Enterprises, L.P. (grantor) and Rose Marie Riley (grantee), recorded in deed book 350, page 0368

**ZHB-3**   redacted excerpts of shopping center lease, revision 4, between Rose Marie Riley (landlord) and ES IV, LLC (tenant), undated, including a "Schematic Site Plan" prepared by Mark Wallace Architect, dated January 10, 2000

**ZHB-4**   architectural floor plan entitled "Proposed Plan," sheet A1.0, prepared by rkc Regan Kline Cross, Architects, dated December 17, 2019

**ZHB-5**   series of 5 color aerial maps and photos:

1.   annotated aerial map of the property area

2.   annotated aerial map of the property area

3.   annotated aerial map of the property area

4.   photograph of property

5.   photograph of property

**ZHB-6**   letter from Paul J. Cambria, Jr., Esq. to the Township Planning Development Office, dated October 16, 2019

**ZHB-7**   letter from Amee S. Farrell, Esq. to Mark Zadroga, Zoning Officer, dated December 17, 2019, enclosing U&O permit application; architectural floor plan entitled "Proposed Plan," sheet A1.0, prepared by rkc Regan Kline Cross, Architects, dated December 17, 2019; and check for $125.00 application fee

**ZHB-8**     letter from Mark A. Zadroga, Zoning Officer, to Amee S. Farrell, Esq. regarding denial of U&O application, dated January 9, 2020

**ZHB-9**     letter from Amee S. Farrell, Esq. to Mark Zadroga, Zoning Officer, dated January 22, 2019 enclosing U&O permit application; architectural floor plan entitled "Proposed Plan," sheet A1.0, prepared by rkc Regan Kline Cross, Architects, dated December 17, 2019; and check for $125.00 application fee

**ZHB-10**    letter from Mark A. Zadroga, Zoning Officer, to Amee S. Farrell, Esq. regarding denial of U&O application, dated February 14, 2020

**ZHB-11**    letter from Marc D. Jonas, Esq., ZHB solicitor, to Amee S. Farrell, Esq. regarding incomplete application (missing documents), dated March 19, 2020

**ZHB-12**    letter from Amee S. Farrell, Esq. to Mark Zadroga, Zoning Officer, regarding continuance of hearing dated March 24, 2020

**ZHB-13**    letter from Amee S. Farrell, Esq. to Mark Zadroga, Zoning Officer, regarding continuance of hearing dated April 28, 2020

**ZHB-14**    letter from Amee S. Farrell, Esq. to Mark Zadroga, Zoning Officer, regrading continuance of hearing dated June 5, 2020

**ZHB-15**    "Owner Authorization to Proceed," signed by Rose M. Riley, undated

**ZHB-16**    Montgomery County Board of Assessment Appeals property information and tax parcel map

7

>> **ZHB-17**   Google map of property
>>
>> **ZHB-18**   legal notice
>>
>> **ZHB-19**   proof of posting
>>
>> **ZHB-20**   proof of publication

18.   At the commencement of the hearing, Landowner and the Township were given an opportunity to present evidence and legal argument on the issue of subject matter jurisdiction—the legal effect, if any, of Landowner's failure to appeal the First Determination Letter. [N.T., p. 6].

19.   Landowner did not present any witnesses and did not offer any evidence.

20.   The Township did not present any witnesses and did not offer any evidence.

21.   Both parties presented legal arguments. [N.T., pp. 6–19, 20–33, 33–36].

## II.   **DISCUSSION**

"[J]urisdiction is a threshold issue." *Martin v. Zoning Hearing Bd. of W. Vincent Twp.*, -- A.2d ---, 2020 Pa. Commw. LEXIS 321, at *8 (Pa. Cmwlth. Apr. 29, 2020). Before a zoning hearing board may reach the merits of a matter, it must first determine whether it has jurisdiction over that matter. *Id.* "Lack of subject matter jurisdiction of a court or administrative tribunal to act in a matter is an issue that neither can be waived by the parties, nor can the parties confer subject matter jurisdiction on a court or tribunal by agreement or stipulation." *Id.* at *8-9 (internal quotations omitted). "Where an act of assembly fixes the time within which an appeal may be taken," reviewing bodies "have no power to extend it, or to allow the act to be done at a later day, as a matter of

indulgence." *Id.* (quoting *Julia Ribaudo Senior Servs. v. Dep't of Pub. Welfare*, 969 A.2d 1184, 1188 (Pa. 2009)).

Under the Pennsylvania Municipalities Planning Code ("MPC"), a zoning hearing board has exclusive jurisdiction to hear appeals "from the determination of the zoning officer, including, but not limited to, the granting or denial of any permit, or failure to act on the application therefor...." 53 P.S. § 10909.1.

Section 107 of the MPC defines "determination" as a:

> [F]inal action by an officer, body or agency charged with the administration of any land use ordinance or applications thereunder, except the following:
>
> (1)    The governing body;
> (2)    The zoning hearing board; or
> (3)    The planning agency, only if and to the extent the planning agency is charged with final decision on preliminary or final plans under the subdivision and land development ordinance or planned residential development provisions. Determinations shall be appealable only to the boards designated as having jurisdiction for such appeal.

53 P.S. § 10107(b). The MPC imposes a thirty (30) day appeal period:

> (b)    All appeals from determinations adverse to the landowners *shall* be filed by the landowner within *30 days after notice* of the determination is issued.

53. P.S. § 10914.1(b) (emphasis added).

Failure to appeal a zoning officer's determination within the time prescribed by section 914.1(b) of the MPC results in the determination becoming final, binding, and unassailable. *Johnson v. Upper Macungie Township*, 638 A.2d 408 (Pa. Cmwlth. 1994); *accord In re Appeal of Provco Pinegood Sumneytown, LLC*, 216 A.3d 512, 518 (Pa. Cmwlth. 2019) (applicant's failure to appeal a zoning officer's oral interpretation of a

zoning ordinance "within 30 days results in the determination becoming binding and unappealable.")

This fundamental maxim was recently confirmed in the Commonwealth Court's decision in *Martin v. Zoning Hearing Board of West Vincent Township*, -- A.2d ---, 2020 Pa. Commw. LEXIS 321, at *8 (Pa. Cmwlth. Apr. 29, 2020). In *Martin*, the court considered an untimely appeal of a zoning officer's enforcement notice where the municipal solicitor granted an extension of the appeal period. After negotiations to resolve the underlying zoning violation broke down, the landowner filed an appeal to the zoning hearing board more than a year after the notice was issued. The zoning hearing board denied the appeal on other grounds.  On further appeal, the Commonwealth Court ruled that the appeal should have been quashed.  The court vacated the zoning hearing board's determination because the zoning hearing board lacked jurisdiction over the appeal in the first instance and should not have decided the matter.

In *Visual-Educational Devices, Inc. v. Springettsbury Twp.*, 422 A.2d 235 (Pa. Cmwlth. 1980), a zoning officer revoked a use and occupancy permit.  The property owner did not appeal the permit revocation. The municipality instituted a complaint in equity to stop the illegal use.  In its answer, the property owner contended that the permit had been improperly revoked by the zoning officer. The Commonwealth Court ruled that because the property owner had not appealed the zoning officer's action, the revocation was uncontestable:

> So here [property owner]'s exclusive mode for securing review of the action of the Springettsbury Township zoning officer's action revoking its permit was by appeal to the township hearing board. Its failure to appeal rendered the action of revocation uncontestable on the ground that it did not falsely misrepresent the intended use of its property, or

> that the township has not uniformly required descriptions of
> the intended uses on permit applications, or nevertheless that
> [property owner] had vested rights in the permit it obtained.

*Id.* at 237. *See also Lower Mt. Bethel Twp. v. Gacki*, 150 A.3d 575, 580 (Pa. Cmwlth.

2016) (determination of ordinance violation was conclusive because violation notice was

never appealed to zoning hearing board); *Southampton Twp. v. Dixon*, 756 A.2d 147, 149

n.6 (Pa. Cmwlth. 2000) ("if a landowner fails to appeal an ordinance violation notice to the

zoning hearing board, the violation is conclusively established and is rendered binding

and unassailable in further proceedings.").

During oral argument, Landowner attempted to distinguish the case law raised by

the Township, noting that the cited cases dealt with zoning violations and whether a

district justice could address the merits of a zoning violation if an untimely appeal were

filed. [N.T., p. 12]. The distinction does not avoid the legal effect of a failure to timely

appeal.

The cases that address the lack of a zoning hearing board's jurisdiction over

untimely appeals of notices of violation all refer to "determinations" by the zoning officer

and the common MPC jurisdictional basis.  *See Martin* (referencing section 914.1 of the

MPC and appeals of zoning officer determinations); *Johnson,* 638 A.2d at 412 ("failure to

appeal the notice *determination* does render the alleged violation binding, so that *de novo*

review of the issue by the district justice is not permitted...."); *Twp. of Penn v. Seymour*,

708 A.2d 861, 864 (Pa. Cmwlth. 1998) ("...failure to appeal the notice to the ZHB, would

result in a binding determination that the Ordinance was violated.").

It is legally insignificant whether the zoning officer's determination is made after a

violation has occurred or in the denial of a permit for a proposed use. Both situations

11

result in a determination by the zoning officer that must be appealed timely to the zoning hearing board.

The courts have applied this principle to the denial of permits. In *Fircak v. North Strabane Township*, 59 A.3d 691 (Pa. Cmwlth. 2012), a property owner was denied a home occupation permit. While the zoning officer denied the application on January 6th, the property owner did not file a "notice of appeal" to the zoning hearing board until February 12th. The Commonwealth Court noted that the appeal was filed "more than 30 days after the zoning officer's purported denial, rendering any such appeal untimely and depriving the ZHB of jurisdiction over such an appeal." *Fircak*, 59 A.3d 691 n.8.

Also, in *J.B. Steven, Inc. v. Zoning Hearing Board of Hempfield Township*, 658 A.2d 458 (Pa. Cmwlth. 1995), a property owner was denied building permits to erect a billboard. The property owner filed a mandamus action to compel the issuance of the permits. The court dismissed the appeal as premature because an adequate statutory existed—an appeal to the zoning hearing board. The property owner thereafter filed an appeal to the zoning hearing board, which denied the appeal as untimely and alternatively found that denial had been appropriate. On appeal, the Commonwealth Court held that the zoning hearing board should not have considered the merits of the appeal because it was untimely and should have been dismissed without consideration of the underlying merits.

It is undisputed that the First Determination Letter was a "determination" that provided a right to appeal to the ZHB. During oral argument, counsel for Landowner acknowledged that the First Determination Letter was a final determination.[2]

Instead of appealing the determination to the ZHB, Landowner submitted a second use and occupancy application with correspondence contending that the Zoning Officer "misapprehended" the first application. In an email to the Zoning Officer attached to Landowner's brief, counsel for Landowner referred to the appeal period for the first adverse determination, stating: "I'd prefer not to have to appeal the prior decision...." [N.T., p. 21]. Counsel was aware that (1) the First Determination Letter was a final determination, and (2) that the determination was subject to a 30-day right of appeal.

Because the determination was not appealed by the Landowner within the thirty-day appeal period required by section 914.1(b) of the MPC, the ZHB lacked jurisdiction to hear the appeal—the first determination became final, binding, and unassailable.[3]

Landowner contends that the Second U&O Application is separate and distinct from the First U&O Application and can be separately appealed despite the failure to appeal the First Determination Letter. Landowner relies on *Church of the Savior v. Zoning Hearing Board of Tredyffrin Township*, 568 A.2d 1336 (Pa. Cmwlth. 1989) and *Harrington v. Zoning Hearing Board of East Vincent Township*, 543 A.2d 226 (Pa. Cmwlth. (1988) to support the contention that the doctrine of *res judicata* is inapplicable in this circumstance. These cases however, are distinguishable.

---

[2]         **LANDOWNER'S COUNSEL**: We also agree with the Township that the January 9th determination was in fact [a] final determination.

[N.T., p. 10].
[3] Landowner contends that the Zoning Officer failed to respond timely, somehow justifying the Landowner's failure to appeal. However, Landowner never filed a *nunc pro tunc* appeal. Landowner also failed to present evidence supporting its claim of bad faith.

In *Church of the Savior*, a church applied for, and was denied a variance for a nonprofit entity to offer professional counseling services on its property. After the denial, the church, which was permitted pursuant to a previously granted special exception, applied for a modification of its special exception to allow a church employee to offer professional counseling.  The zoning hearing board ruled the earlier variance denial was *res judicata* of the second application.  The Commonwealth Court disagreed.  It found that the two applications were distinct because they asserted different theories (variance versus special exception modification) and were factually distinct (nonprofit entity versus church employee providing services).

In the present appeal, Landowner's applications contained virtually identical information and relied on the same architectural floor plan depicting the same use and the same allocation of space to each use.  The only difference was in the transmittal letters accompanying the applications. There was no factual change between the applications. There was no change in the character of relief requested.  While Landowner asserts that the transmittal letter provided "additional information" demonstrating compliance with Articles XXXVIII (Sexually Oriented Businesses) and XXXIX (Obscenity and Other Sexual Materials) of the Zoning Ordinance, failure to provide this information was not the basis for the first determination.  Rather, the Zoning Officer denied the First U&O Application because an adult use is not permitted in the GC District. The reference in a following sentence to provisions of the Zoning Ordinance was to alert Landowner that adult uses, where permitted, are required to satisfy certain requirements.

In *Harrington v. Zoning Hearing Board of East Vincent Township*, 543 A.2d 226 (Pa. Cmwlth. 1988) an applicant was denied special exception approval for a home

occupation of a shed attached to a barn.  The first application solely asserted that a special exception was warranted because the shed constituted a dwelling unit.  The applicant did not appeal the zoning hearing board's denial of that application, but instead filed a second application requesting the same relief, as well as requests for an interpretation of the applicable zoning provision, a request for special exception approval for a home occupation of the shed as an artist's studio and woodworking shop, and a variance.  The zoning hearing board denied the second application for the reason that the special exception request was barred by *res judicata*.  The Commonwealth Court reversed on the issue of *res judicata*, concluding that there had been a sufficient change in theory to render *res judicata* inapplicable.

In the case at bar, there was no change in theory between the first and second applications.  The first transmittal letter asserted that the proposed use was "a general retail (smoke shop) use, with an accessory/non-principal 975 s.f. general retail (adult use)." [Ex. ZHB-7].  The second transmittal letter stated:

> Tenant proposes to occupy the Leasehold for a general retail use.  The items intended for sale include smoke-related items, as well as a small portion of adult-themed products (magazines, books, marital aids, etc.)...."

[Ex. ZHB-9, p. 1].  Both letters described the same proposed use: general retail with a portion dedicated to the sale of adult materials.  Both applications included the same architectural floor plan, prepared by the same architect, created on the same date, and identifying the same allocation of space to "GENERAL RETAIL" and 21% "ADULT" uses.  The second transmittal letter expounded on Landowner's legal argument that an adult use is permitted in the GC District as a non-principal use, but the underlying use did not change, nor did the underlying theory of relief. As Landowner's attorney stated in the

15

second transmittal letter, the purpose of the Second U&O Application was to correct the Zoning Officer's "misapprehension" of the proposed use, not to present a modified use, present a new theory of relief, or request alternative relief. The purpose of the second application was an attempt to avoid the conclusive legal effect of failure to appeal the first determination.

By its failure to appeal the First Determination Letter, Landowner forfeited the opportunity to timely challenge the Zoning Officer's determination that an adult use is not permitted in the GC District. This determination is final, binding, and unassailable. An adult use is not permitted in the zoning district.

The ZHB lacked jurisdiction over an untimely appeal of the Zoning Officer's determination.

III.   **CONCLUSIONS OF LAW**

1.    A zoning hearing board has exclusive jurisdiction to hear appeals from determinations of the zoning officer, including the grant or denial of any permit. 53 P.S. § 10909.1

2.    Appeals of a zoning officer's adverse determination must be brought within 30 days after notice of the determination is issued. 53. P.S. § 10914.1(b)

3.    Failure to appeal a zoning officer's determination within the statutory appeal period renders the determination final, binding, and unassailable, and deprives a zoning hearing board of subject matter jurisdiction over the matter.

4.    Subject matter jurisdiction is a threshold matter that the zoning hearing board must address before reaching the merits of an appeal.

5.      If a zoning hearing board lacks subject matter jurisdiction over an appeal, it must dismiss the appeal.

6.      The First Determination Letter was a final "determination."

7.      Landowner did not appeal the First Determination Letter.

8.      The Zoning Officer's determination in the First Determination Letter that the proposed adult use is not permitted in the GC District is final, binding, and unassailable.

9.      Landowner's Second U&O Application was not a separate and distinct application from the First U&O Application.

10.     The Second Letter cannot be separately appealed to avoid the legal effect of Landowner's failure to appeal the First Determination Letter.

11.     The ZHB lacked subject matter jurisdiction over Landowner's appeal.

At its July 15, 2020 public hearing, the ZHB voted to deny the appeal, which was followed by the mailing on July 16, 2020, of this notice of decision:

_____

*This letter provides notice of the decision of the Upper Merion Township Zoning Hearing Board following the conclusion of the hearing on Wednesday, July 15, 2020.*

*The Zoning Hearing Board voted to dismiss the appeal of the zoning officer's determination for lack of jurisdiction. Since the applicant/appellant did not appeal the January 9, 2020, determination letter of the township code enforcement officer, the zoning determination in that letter is deemed final and unassailable.*

17

*Because the appeal was dismissed, the Zoning Hearing Board will issue a decision with findings of fact, conclusions of law, and reasons.*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This decision may be appealed to the Court of Common Pleas of Montgomery County within 30 days of the date of mailing.

**ZONING HEARING BOARD OF**
**UPPPER MERION TOWNSHIP**

DocuSigned by:

*Mark DePillis*

E90101S610EE477

Mark S. DePillis, Esq., Chairman

# EXHIBIT K



# UPPER MERION TOWNSHIP
## CODE ENFORCEMENT

175 WEST VALLEY FORGE ROAD
KING OF PRUSSIA, PA 19406-1802
610-265-2606
FAX: 610-265-8467
www.umtownship.org

**BOARD OF SUPERVISORS**

WILLIAM JENAWAY, PhD
CHAIRPERSON

CAROLE KENNEY
VICE-CHAIRPERSON

TINA GARZILLO
GREG PHILIPS
GREG WAKS

**TOWNSHIP MANAGER/
SECRETARY-TREASURER**

ANTHONY HAMADAY

**TOWNSHIP SOLICITOR**

FIRM OF:
HAMBURG, RUBIN, MULLIN,
MAXWELL & LUPIN, P.C.

September 21, 2020

Amee S. Farrell, Esq.
Kaplan Stewart
Union Meeting Corporate Center
910 Harvest Drive
Blue Bell, PA 19422-0765

### Re: ES IV, LLC - 143 South Gulph Road King of Prussia, PA 19406

Dear Amee:

In your cover letter dated, September 4, 2020, you indicate the permit application submitted is for a general retail use, smoke-related items. On the floor plan submitted with the permit application, there are two (2) dressing areas and a display area for lingerie and toys.

As you are aware from the recent Zoning Hearing Board decision, a sexually oriented business is not permitted at the above referenced property. Therefore, I will need an explanation of the proposed use including examples and pictures of the dressing rooms, lingerie and toys to determine if the proposed use is permitted.

If you have any questions, please do not hesitate to contact me at 610-205-8511.

Sincerely,

Mark A. Zadroga
Director of Code Enforcement

C: A. Hamaday, Township Manager
   J. McGrory, Township Solicitor
   B. Kearney, Township Solicitor

Copy emailed to: afarrell@kaplaw.com and mailed first class

*What people do for themselves dies with them; what people do for their community lives on …*